# Appeals of City National Bank and York County National Bank.

1. It is not essentially necessary for a mortgage to show on its face, that it was given for purchase-money, in order to give it a preferred lien.

2. H., by articles of agreement, sold certain land to N. Before the latter had fully paid therefor, he sold the land to P. and W. To avoid the expense of an intermediate conveyance it was agreed that H. should convey directly to P. and W., and they should execute a mortgage to him to secure the residue of the purchase-money due to him, and also to execute to N. another mortgage to secure the payment of the remaining sum agreed to be paid for the title. The deed and mortgages were made of one date and were executed, delivered and recorded the same day. *Held,* that the mortgage to H. was entitled to a preference over the mortgage to N.

June 2d 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    WOODWARD, J. absent.

Appeals from the Court of Common Pleas of *Lycoming county:* Of May Term 1879, Nos. 214 and 215.

Appeals of the City National Bank of Williamsport, and the York County National Bank, from the decree of the court in the distribution of the proceeds of the sheriff's sale of the real estate of Joseph H. Wonderly and Ozias Potter, deceased, in the hands of Albert T. Nichols, his administrator.

John B. Hall, being the owner in fee of certain real estate known as the "Foundry property," in the city of Williamsport, in 1864, entered into articles of agreement to sell the same to Albert T. Nichols who in 1866, sold the same to Ozias Potter and Joseph H.

Wonderly, there being at the time a balance of $16,000 due Hall from Nichols on the aforesaid agreement. On the 31st of October 1866, Hall executed and delivered to Potter and Wonderly direct a deed of the premises, and the same day Potter and Wonderly gave to Hall bonds for the $16,000 due him from Nichols, and a mortgage of the premises to secure the same; and to Nichols, the same day, bonds for the sum of $24,000 and a mortgage of the same premises to secure the same. The deed and two mortgages were filed for record on the day of their execution.

· The bonds to Hall were all paid by the obligors, except one of $4000, which was assigned by Hall to E. L. Piper, and by Piper to Mrs. Catharine J. Packer. Three of the bonds given to Nichols, amounting to $6000, were paid by the obligors. Of these, one bond of $4000, had been assigned by Nichols to Robert Porter, in 1867, as collateral security for a loan of $5500, for which Nichols had given his note, with endorsers, and which note, with the interest thereon, remained unpaid, and said bond was assigned by Porter to Oliver Watson, on the 9th day of May 1878. The remaining seven bonds of $2000 each were assigned by Nichols to E. L. Piper, December 9th 1867, and reassigned by Piper to Nichols, in 1874 and 1875; and subsequently thereto, to wit, on the 29th of May 1875, two of said bonds were assigned by Nichols to the City National Bank of Williamsport, as collateral security for a loan to said Nichols upon his note, with endorsers, which note remains unpaid; and five of said bonds were assigned by said Nichols to William H. Armstrong, and by him to the York County National Bank as collateral security for a loan of $10,000, obtained by Nichols on his notes, endorsed by said Armstrong and others, and which note remains unpaid and the endorsers were never released. The bonds were assigned to Armstrong to obtain his endorsement of Nichols's notes, and assigned by Armstrong to the York County National Bank after failure of Nichols to pay his notes.

On September 6th 1869, Ozias Potter, one of the obligors in the said bonds and mortgages, and owner of the undivided one-half of the property described in the aforesaid deed and mortgages, died, leaving to survive him a widow and an adopted daughter, Ella R., since intermarried with Oliver Watson, Jr., having made a will, and on the 8th of October 1870, letters of administration *de bonis non* were granted to the aforesaid A. T. Nichols.

On the 11th January 1871, Joseph H. Wonderly, the other obligor in said bonds and mortgages, and owner of the other half part of the said premises, with his wife, by their deed dated January 10th 1871, conveyed to said Nichols the one undivided half part thereof. This conveyance was expressly made subject to the payment by Nichols of the balance of the debt and interest due upon both of the aforesaid mortgages, and the fact that part or all of the bonds thereby secured had been assigned to third parties was

distinctly recognised. This deed also contained a covenant by Nichols " to assume and pay the balance of the debt and interest owing upon said two mortgages and bonds secured thereby, and to save harmless the said Wonderly from any liability for the same," and it was moreover expressed that the performance of said covenant by said Nichols was a part of the consideration of said deed, and the deed was executed by Nichols, as well as the grantors. Mrs. Catharine J. Packer issued a scire facias upon the Hall mortgage, obtained a judgment, and issued a levari facias to May term 1878, and then assigned the judgment to Oliver Watson. A sheriff's sale of the property to Oliver Watson realized $9800, for which sum, the sheriff returned he had taken the receipt of Oliver Watson under the Lien Creditor Act, Mr. Watson claiming that the fund should be appropriated first to the payment of the Hall mortgage, balance in full of debt and interest, $5016.47, and the balance should be applied to the bond which had been assigned by Nichols to Porter and by Porter to him, the said Watson, and so the auditor reported. To this report exceptions were filed on the 31st day of December 1878, by the City National Bank and the York County National Bank, and the case referred back to the auditor to make a new distribution on the principles indicated in the opinion of the court, to wit, that Nichols, by virtue of his succession to Wonderly's half interest in the property, and having paid off the mortgage, was entitled to subrogation as against Potter, but confirming the distribution so far as applied to the Hall mortgage. The auditor made a second report, distributing the $4500, pro rated upon the whole of the Porter bond and the one-half of the amount of the bonds held by said banks. To this report Oliver Watson and Oliver Watson, Jr., and the banks filed exceptions on the 18th of April 1879, alleging as error that the auditor erred in not distributing the whole balance of $4475 to the Porter bond; that the distribution was not in accordance with the law and the facts, and that there was error in the court refusing to confirm the first report and referring the same back to the auditor.

On May 9th 1879, a final decree of the court was filed, making a distribution different from that made by the auditor, but not as claimed by Oliver Watson, overruling the exceptions, except to the extent that the distribution made by the auditor was changed by the opinion as filed by the court, and confirming the report of the auditor absolutely. By this decree the $4475, were distributed as follows:

One-half thereof to the Porter bond held by Watson, $2237.50
And of the remaining one-half, to wit, $2237.50:
To Oliver Watson on the Porter bond, . . . 280.46
                                                ─────────
                                                $2517.96

| | | |
|---|---|---|
| To the bond held by City National Bank, | . . | 579.47 |
| To the bond held by York County National Bank, | | 1377.57 |
| | | $4475.00 |

From which final decree Oliver Watson and Oliver Watson, Jr., appealed to the Supreme Court [see report of case, 9 Norris 426: REP.], and the two banks took these appeals, alleging that the court erred,

1. In deciding that the Hall mortgage was entitled to be paid first, in full, out of the proceeds of the sheriff's sale.

2. In deciding that the bonds held by the City National Bank, and the York County National Bank, were only entitled to share in the distribution as to one-half their amount.

3. In deciding that one-half of the Watson bond should be first deducted out of the balance for distribution, after paying the Hall mortgage.

4. In making distribution to Watson on the basis of the entire amount of the bond assigned to him, the same having been assigned as collateral security for a debt of $3000 to Porter.

*A. J. Dietrick*, for the City National Bank.—The appellant is still disposed to adhere to the views and position taken before the auditor, that the Hall mortgage and the Nichols mortgage, having been executed and recorded on the same day, and there being no recital in the Hall mortgage that it was for purchase-money, therefore not differing from the Nichols mortgage; that there was nothing on the record of which purchasers of the bonds were bound to take notice; that therefore, the mortgages, as to such purchasers, stand equal, and that consequently the City National Bank is entitled to share equally in the distribution of the proceeds realized from the sheriff's sale of the premises upon which they were liens.

*Armstrong & Linn*, for York County National Bank.—A judgment paid may be kept alive in equity when justice requires it to be done: Fleming v. Beaver, 2 Rawle 128. A mortgagee who purchases the land bound by the mortgage will be allowed to use the mortgage for his protection against prior liens: Moore v. Harrisburg Bank, 8 Watts 138. The assignment of the bond to Porter, and by him to Watson, gives this bond no preference over other bonds covered by the same mortgage. All must be paid pro rata: Donley v. Hays, 17 S. & R. 400. The estate of Potter must bear its proportion of the joint encumbrance, and the right of Nichols to contribution inures to the benefit of the bondholders: Gearhart v. Jordon, 1 Jones 325.

*Clinton Lloyd* and *H. W. Watson*, for the Watsons.—Potter and Wonderly were joint obligors in the bonds to Nichols. Either

might pay, and was in duty bound to pay, without consultation with the other. We contend that Wonderly paid the whole of the mortgage-debt, not the half thereof, as the court intimated in their opinion, by the sale of his undivided interest in the property to Nichols. The satisfaction of the mortgage and cancellation of the bonds were a part of the consideration of Nichols's purchase, and as was said by THOMPSON, C. J., in Abbott v. Kasson, 22 P. F. Smith 183, "It would be a novelty for a purchaser of land to keep on foot his own mortgage against his own estate." Granted that Potter was not a party to the transaction, still surely in a scire facias by Nichols, if he still held the bond Potter could make defence that the mortgage had been paid in full by Wonderly, in any way Nichols would be estopped from recovery on the mortgage by the covenant in the deed from Wonderly, by which he agreed as part of the consideration to satisfy the mortgage and cancel the bonds, and his assignees can stand in this respect in no better position than himself.

Mr. Justice MERCUR, delivered the opinion of the court, October 6th 1879.

These two appeals were argued together. The errors assigned in each are the same. The main contention arises under the first assignment. It involves the question of precedence between claimants under two separate mortgages on the same land, both executed at one time, and recorded on the same day. It appears that Hall owned the land, and by articles of agreement sold it to Nichols. Before the latter had fully paid therefor, he sold to Porter and Wonderly. To avoid the expense of an intermediate conveyance, it was agreed that Hall should convey directly to Porter and Wonderly, and they should execute a mortgage to him to secure residue of the purchase-money due him; and also execute to Nichols another mortgage to secure the payment of the remainder of the sum which they had agreed to pay for the whole title. In pursuance of this agreement, the deed and mortgages were made of one date, and they were executed, delivered and recorded on the same day. Thus, substantially and in effect, the mortgage to Hall was for the purchase-money due him on the legal title, and the mortgage to Nichols was for the value of his equitable interest in the land. The mortgage to Hall having thus been recorded on the day of its execution and delivery, and on the day of the delivery of the deed, is clearly entitled to a preference over the other mortgage. Hall was guilty of no laches whereby his prior lien was defeated. It is not essentially necessary for the mortgage to show on its face, that it was given for purchase-money, in order to give it a preferred lien. The fact that it was so given was known to mortgagors and mortgagees. Nichols could not assert any equity to defeat the superior right of the mortgage given to Hall.

The record showed the deed from Hall, and the mortgage to him, on the same land; both to bear the same date, and that they were both recorded on the same day. These facts were sufficient to put a purchaser of the mortgage from Nichols on inquiry. Due inquiry would readily have resulted in full notice of the preferred lien of the Hall mortgage. The learned judge was therefore right in holding that the mortgage given to Hall for the purchase-money created a preferred lien.

The fifth assignment involves the existence of a fact which does not appear to have been questioned in the court below. No exception was there filed against the right to collect more than the sum for which the bond was originally pledged in 1867 or 1868. The right to collect the whole bond, having there passed unquestioned, we will not now assume that right not to exist. Besides, it is shown, that in 1875, Nichols, formally in writing, did assign to Porter the whole bond and a proportionate part of the mortgage, and Porter assigned them to the appellee. No further consideration of the other questions is necessary. They have been sufficiently discussed in the opinion just filed in Watson's Appeal from the same decree.

Decrees affirmed, and the appeals dismissed at the costs of each appellant in its respective appeal.