## Benton Coleman, Appellant, *v.* J. C. Reynolds, Mortgagor, and Lewis Armstrong and A. M. Wrigley, Terre-Tenants.

*Deed—Title—Destruction of deed—Conveyancing.*

Title once passed by a delivered deed cannot be divested by mere destruction of the deed, but this refers to the destruction of title, not to its strengthening which may always be done by additional conveyances even if not legally necessary; and the conveyancing may be changed to suit the convenience or whim of the parties at any time until other rights intervene. A deed of release or quitclaim or confirmation is a valid instrument, although it may in fact convey no interest in the land, and have no other legal effect than to quiet the fears of the parties.

*Deed—Conveyancing—Recording deed—Searches—Mortgage.*

Ordinary practice in conveyancing should always carry the search against the grantor down to the date of the recording of his deed, if it has not been recorded within six months of its execution.

C. sold and conveyed to R. and L. a tract of land and received from them a purchase money mortgage which was duly recorded. The deed however was not recorded at the time. R. and L. having disagreed, the latter conveyed his interest in the land to the former and desired to be released from the obligation of his bond and mortgage to C. The parties thereupon agreed that the mortgage and the unrecorded deed should be canceled, and a new deed from C. to R. alone and a mortgage from R. to C. should be substituted in their place. This arrangement was carried out and the new deed and the new mortgage were executed, and about two weeks afterwards were recorded. On the same day the first mortgage was satisfied of record. After the execution of the new deed and mortgage, but before they were recorded, a judgment was entered against R. About eighteen months afterwards R. put on record the first deed from C. to himself and L. The property was subsequently sold at sheriff's sale to W. *Held,* (1) that the second deed and mortgage were valid and effective instruments in substitution for the first deed and mortgage, and as such binding on the parties; (2) that the second mortgage was a valid purchase money mortgage entitled to all its privileges and priority as such between the parties, and against all others but those who may have been misled by C's action into acquiring rights on the appearance of a different state of facts; (3) that the record put W. on inquiry as to the explanation of the second conveyance, and was notice of everything which inquiry would have shown him.

Argued Feb. 25, 1897. Appeal, No. 594, Jan. T., 1896, by plaintiff, from judgment of C. P. Wyoming Co., Jan. T., 1896,

No. 109, on verdict for terre tenants. Before WILLIAMS, MC-
COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Scire facias sur mortgage, with notice to terre-tenants. Be-
fore DUNHAM, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[We say to you, as a matter of law, that when Benton Cole-
man deeded the land in question to J. C. Reynolds and Levi
Lindley, either by deed of assignment or by ordinary deed, he
parted with all right and title to the land, and that the only
way he could obtain any title or interest in the same again was
by a conveyance from the owners of the same ; and the undis-
puted evidence being that he had never received such reconvey-
ance, upon November 11, 1891, he had no interest in the same
except what he held by virtue of his mortgage against J. C.
Reynolds and Levi Lindley, and his second conveyance to J. C.
Reynolds conveyed no title whatever. We further say to you
that a party may change the securities he holds for any debt or
claim he has against another as often and as many times as he
chooses, and still retain his rights as against the party he holds
the claim against, and so long as the rights of others do not
intervene no one is injured or has a right to complain. But
when a party has taken a security for a debt or claim and
entered it into a judgment or lien, he cannot change that secur-
ity where the rights of others have become attached, and thus
hold his claim good as against such intervening rights, whether
those rights are acquired by judgment, mortgage or deed. We
further say to you, gentlemen, that a purchaser at sheriff's sale,
or otherwise, where the person he purchases from is in posses-
sion of the land, is not required to look further than the public
records, and is affected by no reports that he may hear, unless
the same come from a party interested in the land or claim, and
then it must be notice of the actual claim held.

Applying these principles to this case it appears beyond con-
troversy that upon November 11, 1891, this plaintiff chose to
change the security he held against J. C. Reynolds and Levi
Lindley by satisfying or agreeing to satisfy his purchase money
mortgage against them and to take a new mortgage against

J. C. Reynolds in payment of the old mortgage, or in place · thereof; that on the 28th of the same month he did satisfy his old mortgage of record and place the new one upon record; that while he gave a new deed to J. C. Reynolds for the land already owned by J. C. Reynolds, yet such a deed was a mere nullity and of no effect; that at the time the original purchase money mortgage was satisfied there was a judgment in favor of the Scranton Savings Bank and Trust Company standing against J. C. Reynolds, which, by this change of securities, became a first lien upon the land, so that the sale of the land upon this judgment divested the lien of the mortgage and the purchaser took the same freed from the mortgage.] [1]

Plaintiff's points and answers thereto were as follows:

1. It being undisputed that the defendants, J. C. Reynolds and Levi Lindley, purchased the land pledged in this case from the plaintiff B. Coleman, and gave him a mortgage to secure the purchase money, which was duly executed on March 9, 1891, and duly recorded on March 24, 1891, and that subsequently, to wit: on October 3, 1891, the said defendant, J. C. Reynolds, purchased the interest of the said Levi Lindley; J. C. Reynolds thereupon being the sole purchaser, it was entirely competent for him to make the arrangement with the plaintiff Coleman to make out a new deed to take the place of the one to him and Levi Lindley, and to give a new mortgage to take the place of the one given by him and Lindley to Coleman, and to thus supersede the former conveyance and mortgage. *Answer:* This we do not affirm as written; but say to you that J. C. Reynolds could only convey the interest he owned in the land by writing duly signed by him, but that as between Reynolds and Coleman, Coleman could satisfy his former mortgage and take a new one in its place with same effect as the former one, providing, it did not interfere with any acquired rights of any other person. [2]

2. That by such substitution, no change was made in the character of the lien; on the contrary, the new mortgage was just as much a purchase-money mortgage as the former, and continued the lien as such. *Answer:* This point, gentlemen, we do not affirm, as we have already instructed you. [3]

3. That the record showing that there was such a deed from Coleman to Reynolds dated November 11, 1891, and recorded

November 28, 1891, and a mortgage from Reynolds to Coleman of the same land as that in the said conveyance, and bearing precisely the same date, and recorded the same day, this was record notice that the said mortgage was a purchase money mortgage. *Answer :* This would be true were it not for the fact that the record itself shows that Benton Coleman had parted with his title and taken a mortgage therefor prior to this time. Therefore we deny the point as presented. [4]

4. The record thus showing regular notice of the character of this mortgage, and in addition, that on the same day that it was thus put on record, a former mortgage from said Reynolds and Levi Lindley, pledging the same land, was satisfied, this was sufficient to put a purchaser upon inquiry, and was notice of what would have been learned upon such inquiry. *Answer :* This we do not affirm. [5]

5. In addition to the said record evidence, the uncontradicted evidence of both plaintiff and defendant, J. C. Reynolds, that the indebtedness secured by the mortgage dated November 11, 1891, was simply and only that for the purchase of the land, definitely shows that it was a purchase-money mortgage, and the record showing that it was recorded within sixty days after its date and delivery, its lien took effect from its execution, and it was therefore prior in lien to the judgment of The Scranton Savings Bank and Trust Company and remained a fixed lien notwithstanding the sheriff's sale thereon. *Answer :* This we do not affirm. [6]

6. The plaintiff having duly recorded his said mortgage as aforesaid, had discharged his full duty in the matter of giving notice thereof, and was not required by the law to attend the sheriff's sale, nor give any further notice thereat. *Answer :* That we do not affirm. [7]

7. To permit a party to obtain a substitution of conveyance and mortgage, as was obtained by the defendant in this case, at his own request and for his convenience, and then to obtain any advantage, by placing on record, two years and upwards after their execution, the deeds thus superseded, would not only be in violation of our acts of assembly, but such a practice as no court administering right and justice by the due course of the law, as our constitution requires, can permit. *Answer :* This point we decline to affirm as written. [8]

8. That under all the evidence in the case, the verdict should be for the plaintiff for the amount of $1,760.82, with interest from March 1, 1894. *Answer :* This point we affirm as against J. C. Reynolds. Your verdict in this case should be for the plaintiff and against J. C. Reynolds for the sum of $2,047.84, that being the sum of $1,760.82, with interest thereon from that date, and in favor of A. M. Wrigley and Lewis Armstrong, or that A. M. Wrigley and Lewis Armstrong were not terre-tenants. [9]

Verdict for plaintiff against J. C. Reynolds for $2,047.84, and in favor of terre-tenants. Judgment was entered upon the verdict.

*Errors assigned* were (1–9) above instructions, quoting them

*A. Ricketts,* with him *James W. Platt,* for appellant.—When purchase money is the consideration of an instrument, it will continue to be the consideration of any other instrument executed in substitution of the old one, even though part of the purchase money may have been paid before the execution of the second instrument: Austin v. Underwood, 37 Ill. 438; Curtis v. Root, 20 Ill. 53; Jones v. Parker, 51 Wis. 218; Fleming v. Parry, 24 Pa. 50; Mackreth v. Symmons, 15 Ves. Jr. 329.

Whatever is sufficient to put a party upon inquiry amounts to notice: Hulett v. Mut. Life Ins. Co., 18 W. N. C. 374.

A principle of law is never so applied as to promote or protect a fraud: Coble v. Nonemaker, 78 Pa. 501.

And we further submit that the decisions in Bratton's Appeal, 8 Pa. 164; Cake's App., 23 Pa. 186; Parke v. Neeley, 90 Pa. 52; Appeals of City Nat. Bank et al., 91 Pa. 163, and the principles declared in Lancaster v. Smith & Wife, 67 Pa. 427; Brown v. Henry, 106 Pa. 262 and McCune v. McCune, 164 Pa. 611, in addition to those hereinbefore cited, completely rule the case in plaintiff's favor.

*Chas. E. Terry,* with him *E. J. Jordan,* for appellee.—An estate once vested by deed cannot be divested by the mere annulment and cancelation of the deed: Tate v. Clement, 176 Pa. 550.

Our case closely resembles that of Wagner's App. 98 Pa. 77.

The existence of what purports to be an unconditional conveyance is not a reason to suspect the existence of a defeasance or declaration of trust: Friedly v. Hamilton, 17 S. & R. 70.

A purchaser is not obliged to make inquiries as to the title from one who, by deed duly acknowledged and recorded, has emphatically declared that his interest is at an end: Woods v. Farmere, 7 Watts, 382; Lance v. Gorman, 136 Pa. 200; Harding v. Seeley, 148 Pa. 20; Dickinson v. Beyer, 87 Pa. 274; Plumer v. Robertson, 6 S. & R. 179; Lightner v. Mooney, 10 Watts, 407; Washington Co. v. Slaughter, 54 Iowa, 265.

It is settled that mere rumors, casual conversations not in point, or neighborhood reports, are not sufficient to affect a purchaser with notice: Jaques v. Weeks, 7 Watts, 267; Kerns v. Swope, 2 Watts, 75; Boggs v. Varner, 6 W. & S. 469; Wilson v. McCullough, 23 Pa. 446; Churcher v. Guernsey, 39 Pa. 84; Carnegie Nat. Gas Co. v. Phila. Co., 158 Pa. 317; Bank's App., 10 W. N. C. 265; Peebles v. Reading, 8 S. & R. 496; Friedley v. Hamilton, 17 S. & R. 70; Bracken v. Miller, 4 W. & S. 102; Osner v. Dieterle, 19 W. N. C. 192; Budd v. Olver, 148 Pa. 194; Houseman v. Loan Assn., 81 Pa. 256.

OPINION BY MR. JUSTICE MITCHELL, May 24, 1897:

Plaintiff in March, 1891, sold to defendant Reynolds and one Lindley, conveyed to them by deed of that date and received from them a purchase-money mortgage which was duly recorded. The deed however from him to them was not recorded until 1893 as will be noted later on. Reynolds and Lindley having disagreed, the latter conveyed his interest in the land to the former, and desired to be released from the obligation of his bond and mortgage to the plaintiff. Accordingly, after some discussion, the parties agreed that the mortgage and the unrecorded deed should be canceled, and a new deed from plaintiff to Reynolds alone and a mortgage from Reynolds to plaintiff should be substituted in their place. This arrangement was carried out. The new deed from plaintiff to Reynolds and the mortgage from Reynolds to the plaintiff were executed on November 11, 1891, acknowledged a few days later, and recorded on November 28, the first mortgage by Reynolds and Lindley being satisfied of record by plaintiff on the latter day. In the

meantime however on November 25, a judgment was entered by the Scranton Savings Bank against Reynolds, on a judgment note given by him the day before for previous indebtedness. In April, 1893, Reynolds without the knowledge of plaintiff and for reasons not explained, but which the course of events indicates rather plainly, put on record the first deed from plaintiff to himself and Lindley. In April, 1894, the land was sold as the property of Reynolds under the Scranton Bank's judgment, and the defendant, Wrigley, joined herein as terre-tenant, became the purchaser. The question in the case is whether he bought subject to the plaintiff's mortgage of November 11, 1891, or whether that was not to be considered a purchase-money mortgage and therefore was discharged by the sale on a judgment entered before it was recorded.

As between the parties this was clearly a purchase-money mortgage. It was in fact to secure the unpaid purchase money on the very land mortgaged. It is not claimed that there was any other consideration for it, and it is beyond question that the arrangement was not made for plaintiff's benefit in any way but that he acquiesced in it merely for the convenience of the others, and on the distinct understanding of all that his rights were not to be affected. Lindley wanted to be let out of his obligation in regard to the land, and Reynolds was desirous to get rid of him. Wilson distinctly says the second mortgage was " to be done so as to let Lindley out of the deal . . . . to get rid of him in the transaction." In stating the arrangement I have said advisedly that the first deed and mortgage were to be canceled and the new ones substituted in their place, for although some of the witnesses tried with varying success to evade the use of the words " cancel " and " substitute " yet the unquestionable effect of the testimony of each and all of them is that such was the intention, and the only purpose of all the parties in the matter. Being badly advised they did it in this way, but clumsy conveyancing will not impair rights between parties. The thing to be done was lawful and within the power of the parties ; the manner of doing it was not material between them, nor until other rights acquired in good faith intervened. On November 11, when the deeds were executed there were no such other rights. The court below held that as all of plaintiff's title passed from him to Reynolds and Lindley by his first

deed his second deed to Reynolds alone conveyed nothing, but
was a nullity, and when he satisfied the first mortgage he lost
his purchase-money lien and could claim on the second only as
an ordinary mortgage taking rank from the date of record.   A
verdict was therefore directed for the terre-tenants.   But this
was an insufficient ground on which to rule the case.   It is true
that title once passed by a delivered deed cannot be divested by
mere destruction of the deed, Tate v. Clement, 176 Pa. 550, but
this refers to the destruction of title, not to its strengthening
which may always be done by additional conveyances, even if
not legally necessary.   And the conveyancing may be changed
to suit the convenience or whim of the parties at any time until
other rights intervene.   A deed of release or quitclaim or con-
firmation is a valid instrument although it may in fact convey
no interest in the land, and have no other legal effect than to
quiet the fears of some of the parties.   The deed from plaintiff
to Reynolds in November 1891, even if regarded merely as a
deed of confirmation or quitclaim, was a valid instrument, and
must be looked at in connection with the circumstances and
purpose of its execution.   So regarded it is entirely clear that
the deed and the mortgage were valid and effective instruments
in substitution for the prior deed and mortgage, and as such
binding on the parties, and that the mortgage was a valid pur-
chase-money mortgage entitled to all its privileges and priority
as such, between the parties, and against all others but those
who may have been misled by plaintiff's action into acquiring
rights on the appearance of a different state of facts.

This brings us to the really important question in the case,
were these terre-tenants so misled?

If it were necessary to decide the case upon the point whether
Wrigley was a bona fide purchaser without notice of plaintiff's
mortgage, we should be obliged to say that there was sufficient
evidence to send that question to the jury.   Conceding that no
specific item of evidence rises quite to the rank of the notice
required by the cases cited by appellee, yet all the circumstances
combine to show that he or his counsel did know all about it.
He has not the clear standing of a purchaser at the sheriff's
sale relying on the record, for he had bought directly from Rey-
nolds, paid the agreed price to Wilson, and gone into possession
before the sale.   The sheriff's sale was a mere form of convey-

ancing to get a title clear of incumbrances, chief of which was the bank's judgment. Whether the property brought much or little, within the limits of his bargain, was of no moment to Wrigley, for he and the owner had already agreed upon a price to be paid without reference to the amount bid at the sale. The bank, with a judgment which on the face of the record, if plaintiff's mortgage could be excluded as junior, was a first lien for $3,900, stood by at the sale and let the property be knocked down for $55.00. This bid was paid by Wilson out of the money which Wrigley had previously put in his hands as the purchase money under his bargain with Reynolds, and the rest of that money, as Wilson testifies, was distributed among certain of Reynolds's creditors, the bank getting the lion's share. It is difficult to regard this in any other light than as a preconcerted scheme between Reynolds and the other parties to it, in which the plaintiff's mortgage was intentionally shut out.

But it is unnecessary to put the case on that ground, as the record notice is decisive. Assuming, as the most favorable aspect of the case for Wrigley, that he was an intending purchaser at the sheriff's sale, in good faith searching the record to ascertain the state of Reynolds's title, what would he have found? The argument of his counsel in this court is, that a person going to the record for a search in 1894 would start at that date and go back until he came to the title of J. C. Reynolds, the occupant of the property and the defendant in the writ on which the sale was to be made; that he would first strike the conveyances from Coleman to Reynolds and Lindley, and from Lindley to Reynolds, recorded on the same day, April 5, 1893; and that having thus found a clear record title to which Reynolds's possession was referable, he was not bound to look further. But this is an incomplete view. While he would have found that the deed was recorded in April, 1893, he would also have found that it was dated and executed in March, 1891, and he was thus at once put on inquiry not only as to any incumbrances or changes of title made by Reynolds since 1891, but also as to any subsequent conveyances by Reynolds's grantor, the plaintiff, made and put on record ahead of the deed to Reynolds and Lindley. This is not only the rule of strict law, but is the practice of safe conveyancers. " Ordinary practice should always carry the search against the grantor down to the date of

the recording of his deed, if it has not been recorded within six months of its execution:" Price on Limitations and Liens, 348. "In searching for conveyances, search down to the day after the deed to any purchaser has been recorded." Id. 351. Wrigley pursuing his inquiry according to this rule would have found the deed and mortgage of November 11, 1891, between plaintiff and Reynolds. For reasons already noted he would not be entitled to treat this deed as a nullity. True it was from the same grantor for the same land, which was unusual, but it was to only one of the same grantees. There might have been an unrecorded reconveyance by the grantees in the first deed to the grantor, or there might have been, as was the fact, a substitution by agreement of parties. Had the deed of November, 1891, been to a third party it would unquestionably, being first recorded within time, have cut out the title of Reynolds and Lindley under the deed of March. How far Reynolds's title under it supersedes his prior title under the unrecorded deed we need not consider.

The record put the searcher on inquiry as to the explanation of the second conveyance, and was notice of everything which inquiry would have shown him. Then as to the mortgages he would have found a first one, of even date with the first deed, and duly recorded, but satisfied November 28, 1891, and recorded on this same day, a second one, on the same land, for the same amount, to the same mortgagee, by one of the same mortgagors, and executed and recorded contemporaneously with the deed of November 11, 1891. Both these mortgages were prima facie for purchase money, for they were by the grantees to the grantor, on the day of the grant, and the exact state of facts existed which in Williamsport Nat. Bank's Appeal, 91 Pa. 163, 168, was declared to put the party on inquiry. It was there said, "The record showed the deed from Hall and the mortgage to him on the same land; both bearing the same date and they were both recorded on the same day. These facts were sufficient to put a purchaser of the mortgage from Nichols on inquiry. Due inquiry would readily have resulted in full notice of the preferred lien of the Hall mortgage." It is thus clear that an intending purchaser searching the record at the time of the sheriff's sale was put upon direct inquiry as to plaintiff's mortgage, and he or his counsel having neglected to make

it, he took the risk and must bear the consequences of the facts as they really were.

There is one other question in the case to which we may refer briefly to avoid misconstruction from its omission. Plaintiff put his original mortgage on record in due time, and kept it there until the second was recorded. The second was a valid purchase-money mortgage between the parties, there were no intervening rights, and the plaintiff had therefore done all that was necessary to preserve his priority up to that time against all the world. Ordinarily no mortgagee is bound to do more, or having once put his title clearly on the record, to concern himself about future dealings with the property by other parties. It is by no means clear that the subsequent act of Reynolds, in recording the first deed without his participation, could deprive the plaintiff of his priority even as against a purchaser without notice. But we do not find it necessary to go further into this question.

On the undisputed facts the verdict should have been directed for the plaintiff against the terre-tenants as well as the defendants.

Judgment reversed, and now judgment entered for plaintiff.