C. E. HAYES, Appellee, v. EMMA C. DEAN et al., Appellants.

DEEDS: Cancellation—Lost and Unrecorded Deeds—Estoppel. The grantee in a lost and unrecorded deed, who voluntarily surrenders all right under said deed, with intent to re-invest the grantor with full title, thereby forever estops himself and those claiming under him from questioning the title of one who, in good faith, subsequently takes title from said grantor.

PRINCIPLE APPLIED: A husband bought a tract of land, paid for it, received a deed to himself as grantee, and said land became, in part, the homestead of himself and wife. Said deed was lost, without having been recorded. Some four years later, the husband requested his grantor to execute a new deed to his (the husband's) wife. The grantor complied, and the new deed recited that the old lost deed was "invalidated." The husband and wife continued in the occupancy of the land. Four different mortgages, wherein the wife was described as the owner, were thereafter executed. The wife also leased a portion of the premises to her daughter, The husband died some forty years after the deed to the wife. A daughter then set up the claim of absolute ownership to the land, under an alleged contract with her father, and, failing in this, alleged an interest as an heir, on the theory that the deed to the mother was a nullity, and that the title of her father was never divested. *Held*:

1. No presumption of resulting trust in the husband was raised by the deed to the wife.

2. The statute relative to the joint conveyance of homesteads by husband and wife had no application to the transaction.

3. The execution of the last deed, at the request of the husband, estopped the husband and those claiming under him from questioning the title of the wife.

**TRUSTS:** Resulting Trusts—Purchase by Husband and Conveyance
2 to Wife—Effect. A rebuttable presumption of gift or advancement, and *not of resulting trust*, arises from the act of one person in purchasing and going into possession of lands, but causing the title to be taken in the name of one for whose support the purchaser is liable—a presumption which, after the long lapse of time, becomes all but conclusive.

PRINCIPLE APPLIED: See No. 1.

**TRUSTS:** Resulting Trusts—Ingrafting Trust on Absolute Deed—
3 Evidence—Sufficiency. Principle recognized that the evidence sufficient to ingraft a trust on an absolute deed must be practically overwhelming.

PRINCIPLE APPLIED: See No. 1.

**QUIETING TITLE:** Evidence—Burden of Proof. One who, by the
4 production of an absolute deed in his favor, makes a prima-facie showing of title in himself, need not negative the existence of alleged trusts in the heirs of his grantors.

**HOMESTEAD:** Transfer—Joinder by Husband and Wife—When
5 Not Necessary. The statutory command that homestead property shall only be conveyed by joint conveyance by husband and

wife has no application to any transaction which in no wise disturbs the homestead right, or which amounts, in effect, to a conveyance by one spouse to another. (Section 2974, Code, 1897.)

PRINCIPLE APPLIED:   See No. 1.

EQUITY:   Maxims—Seeking and Doing Equity—Forfeiture of Equitable Right. One actually entitled to a certain measure of equitable relief may wholly forfeit his right thereto by attempting, by manifestly untruthful means, to unconscionably enlarge such relief.

*Appeal from Humboldt District Court.*—D. F. COYLE, Judge.

OCTOBER 20, 1917.

REHEARING DENIED JANUARY 17, 1918.

ACTION in equity to establish and confirm plaintiff's title to certain land, and for other relief.   Decree as prayed, and defendants appeal.—*Affirmed.*

*Robert Healy, Lovrien & Lovrien,* and *Kenyon, Kelleher & Price,* for appellants.

*G. S. Garfield, C. W. Garfield,* and *Healy & Thomas,* for appellee.

WEAVER, J.—The plaintiff was the wife of R. C. Hayes, who died in the year 1915. During their married life, and in the year 1870, they, or one of them, entered into a contract for the purchase of the land here in controversy from S. H. Taft, and took possession of the premises, establishing there a home, which plaintiff says she has never abandoned.   On April 20, 1874, Taft made and executed a warranty deed of the land to plaintiff.   The deed is in ordinary form, so far as relates to the granting and habendum clauses; but, in the body thereof, after the description of the property, there are inserted the following words:

1. DEEDS: cancellation: lost and unrecorded deeds: estoppel.

"It is hereby understood that this deed takes the place of, and invalidates a certain deed of the same premises heretofore given to R. C. Hayes, which deed has never been put on record and is supposed to be lost."

This instrument was placed of record in the office of the county recorder on the day of its date. On the same day, the husband, R. C. Hayes, united with his wife in making a mortgage on the land, in which instrument the wife is named as owner. In 1875, and again in 1880 and in 1901, other mortgages of like character were made by them. In 1891, the plaintiff, in her own name as owner, made a written contract with her daughter, Emma C. Dean, the principal defendant herein, leasing to her, for a term of twenty years, a site on the land for the erection of a house. After the death of plaintiff's husband, question seems to have been raised by the daughter as to the validity of plaintiff's title; and either then or later, she asserted that her mother's title had been held in trust for her father, and that, under the parol promise of the father to give the daughter the land in consideration of her returning home to live with him and making certain improvements on the premises, she did return and live with her father, and did make the proposed improvements, whereby she became entitled to have and receive said property in her own right. Denying the adverse claims so set up, plaintiff brought this action, asserting her sole and absolute ownership of the property, and asking that her title be quieted, and that the defendants be ousted from possession. The defense pleaded is multiple, or cumulative in character, and is built on the propositions: First, that the title to the land originally vested in R. C. Hayes, by virtue of the lost deed from Taft, to which reference is made in the deed to plaintiff, and that, on the death of the original grantee, it descended as intestate property to his heirs—a theory which, if held good, would leave the plain-

tiff with only a widow's share, under the statute of distribution; second, that R. C. Hayes, being vested with the title, made a valid contract with his daughter, Mrs. Dean, whereby, for a sufficient consideration actually rendered, he promised to convey or will the property to her; and third, that, even if plaintiff's title be upheld, Mrs. Dean is in rightful possession of the property, or a part thereof, under lease from her mother, and cannot be ousted until the expiration of her term. Of this last plea and the evidence relating thereto, we will speak more particularly in a later paragraph of this opinion. Other defenses are pleaded, but are without substantial support in the evidence. The trial court found for the plaintiff on all issues joined, and granted her relief accordingly.

It is not seriously contended in argument that the alleged gift of the land by R. C. Hayes to Mrs. Dean, or the alleged contract under which he undertook to give her the land in consideration of her living with him and making certain improvements, has any substantial support in the testimony; and we shall confine our attention to the other defenses, concerning which there is some pertinent testimony.

I. The principal defense involves the question as to the effect of the clause in the deed to plaintiff reciting the making of a prior deed by the same grantor to her husband. The position taken by appellant's counsel is: First, that the recital is conclusive upon plaintiff that an earlier deed had been made and delivered to R. C. Hayes; second, that such earlier deed was effective to convey the title from Taft to R. C. Hayes; and third, that the deed from Taft to the plaintiff would not operate to divest the title so acquired by the husband, or convey it to the wife. In other words, it is said that, at the time the latter deed was made, Taft had no title which he could convey to any person, and that his deed was, therefore, of no force or effect.

As an abstract proposition of law, the contention is unquestionably sound that a grantor, having parted with his title by a good and sufficient deed, duly delivered, cannot, of his own accord and without the consent of others in interest, destroy or suppress his deed, and thereby reinvest himself with the title so conveyed, and cannot, without such consent, convey title to another who takes such second deed with knowledge of the first. *Matheson v. Matheson,* 139 Iowa 511; *Conway v. Rock,* 139 Iowa 162. The rule is strictly one of law, and will be enforced in all law actions where the facts bring them within its scope; but where an unrecorded deed is by the parties surrendered or cancelled by mutual consent, with the idea of re-investing the grantor with the title which he has conveyed, equity will give effect to such transaction so far as to declare such grantor the equitable owner, and estop the original grantee and those claiming through or under him from asserting any title under the surrendered deed. This rule is recognized in the *Matheson* case, supra, although the facts there shown did not call for its application. So, also, the precedents collated in Notes 15 to 18, inclusive, on page 1023 of Volume 8, Ruling Case Law. To the same effect are *Nason v. Grant,* 21 Me. 160; *Patterson v. Yeaton,* 47 Me. 308, 314; *Holbrook v. Tirrell,* 9 Pick. (Mass.) 104, 108; *Davis v. Inscoe,* 84 N. C. 396; *Fortune v. Watkins,* 94 N. C. 304; *Peterson v. Carson,* (Tenn.) 48 S. W. 383; *Mussey v. Holt,* 24 N. H. 248; *Tomson v. Ward,* 1 N. H. 9; *Poindexter v. Rawlings,* 106 Tenn. 97, 103; *Coleman v. Reynolds,* 181 Pa. 317 (37 Atl. 543); *Crossman v. Keister,* 223 Ill. 69.

It is true that, in most of the cited cases, and perhaps in all of them, it appeared that the first deed was redelivered, or returned by the grantee to the grantor, either for the purpose of entirely rescinding the deal and reinvesting the grantor with the title, or for the purpose of having the grantor convey such title to another grantee; but we can

conceive no sound reason for refusing to apply the same rule where, as in this case, the first deed has been lost, and the parties treat it as having been surrendered and cancelled. The fact that, in the case at bar, the plaintiff received the second deed with notice of the prior conveyance, in no manner affects her right to claim at least an equitable title under her deed, or her right to the benefit of the estoppel against an assertion of a superior title by her husband or by his heirs. *Holbrook v. Tirrell*, 9 Pick. (Mass.) 104, 108. Taft, the grantor, is making no claim adverse to the plaintiff, and the defendants, as heirs of R. C. Hayes, have no other or greater right than could have been asserted and enforced by their ancestor in his lifetime. If he estopped himself to claim title under the lost deed, then they are also estopped. The plea in the answer, that the plaintiff was named as grantor by mistake, or under some sort of trust for her husband's benefit, is without support in the evidence. Taft, the grantor, testifies that the deed was made to plaintiff at the request or direction of R. C. Hayes, and there is not only an entire absence of evidence to the contrary, but its truth is demonstrated by the fact that, on the same day, the wife executed a mortgage on the property, in which Hayes joined, releasing his right of dower. It is also sustained by their subsequent continued recognition of her title for forty years or more.

2. TRUSTS: resulting trusts: purchase by husband and conveyance to wife: effect.

It is argued, however, that it fairly appears that the purchase price of the land was paid to Taft by R. C. Hayes, and not by the plaintiff, and therefore a constructive or resulting trust arose in his favor. Of the general rule that, where the purchase price of property is paid by one person and the title is conveyed to another, the latter is presumed to take it in trust for the former, no question need here be raised. 3 Pomeroy on Equity Jurisprudence (3rd Ed.), Section 1037. But such

rule is quite universally held not to include a case where the one paying the price is under a legal or (sometimes) moral obligation to maintain the person in whose name the purchase is made, the presumption in such case being that the purchase is intended as an advancement or gift, and no trust results.   As said by the author just quoted:

"If, therefore, a purchase of either real or personal property is made by a husband in the name of his lawful wife, * * * or is made by a father in the name of his legitimate child, * * * no trust results in favor of the husband or father , but the transaction is presumed to be a gift or advancement to or for the benefit of the wife or child." 3 Pomeroy on Equity Jurisprudence (3d Ed.) Section 1039.

See also *Andrews v. Oxley,* 38 Iowa 578; *Cotton v. Wood,* 25 Iowa 43; *Cecil v. Beaver,* 28 Iowa 241; *Acker v. Priest,* 92 Iowa 610; *Culp v. Price,* 107 Iowa 133; *Hoon v. Hoon,* 126 Iowa 391; *Mullong v. Schneider,* 155 Iowa 12, 15; *De France v. Reeves,* 148 Iowa 350.

True, the presumption in such cases in favor of the grantee is a rebuttable one, but it can be overcome only by clear and satisfactory preponderance of evidence.   In *Malley v. Malley,* 121 Iowa 237, 239, we said that the presumption, especially where the legal title has stood unquestioned for many years, "is so nearly conclusive that something more than a slight preponderance of the testimony is required to establish a trust;" and in *Andrews v. Andrews,* 114 Iowa 524, we said that a trust can be engrafted on the legal title only "by evidence that is clear,

3. TRUSTS : re- certain, and practically overwhelming."   It
sulting trusts :
ingrafting   is putting it very mildly indeed to say that
trust on ab-
solute deed :   the testimony in the record before us, relied
evidence : suf-
ficiency.   upon to sustain the existence of the alleged
trust, is neither satisfactory, clear, certain, nor overwhelming.   The mere fact that the husband paid the purchase

price has no tendency to prove the alleged trust. Indeed, the presumption in favor of the plaintiff's title rests upon the fact that he did pay it, and caused the deed to be made to the wife. Nor does the fact that he remained in possession and managed or used the land afford the necessary proof. Speaking to this same point in the *Mullong* case, supra, we said:

"The fact that the plaintiff remained in possession and use of the land does not in any manner lessen the weight or effect of this presumption, for, as husband and head of the family, it was the natural thing for him to do, and his labor and service will be presumed to be in furtherance of the same purpose which prompted the original gift."

4. QUIETING TITLE: evidence: burden of proof.
Some reliance is placed upon the thought that plaintiff, being the party who sues, must recover, if at all, upon the strength of her own title, and not upon the weakness of the defendant's claim of title. This may be admitted, and we have to say that plaintiff's claim to equitable relief is good, even when measured by that standard. When the husband returned to his grantor, Taft, reporting or representing the loss of his unrecorded deed, and consenting that such deed should be considered cancelled, or, as the second deed says, "invalidated," requested and procured said grantor to execute another deed in its stead, naming the plaintiff as grantee, he could not thereafter be heard to question the effectiveness of such conveyance, or to assert adverse claims under the lost deed. He might, perhaps, be heard to allege that the parties to the transaction intended that the title taken by his wife should be held in trust for him; but on this issue he would have to assume the burden, and make good his allegation of a trust by the proper measure of evidence. As against his heirs, the wife need do no more than to show her legal or

equitable title, as indicated by the conveyance to her at the request of her husband. To make a prima-facie case for quieting such title, she was not required to negative the existence of any alleged trust in favor of her husband or of his heirs.

5. HOMESTEAD: transfer: joinder by husband and wife: when not necessary.

II. The land in question included the homestead of plaintiff and her husband, and it is argued that the deed to plaintiff is void under the statute, Code Section 2974, which provides that no conveyance of the homestead of a family is valid unless the husband and wife join in the execution of the same joint deed.

Counsel's point, if we understand it, is that the homestead character of the land, or of part of it, had attached before the deed to plaintiff was made; and the conveyance by Taft was, therefore, void. The objection is grounded upon a misconception of the purpose and effect of the statute. It is clearly designed to protect the title and ownership of the homestead in the husband or wife or both, and to prevent either husband or wife from disposing of or incumbering it without the consent of the other, expressed in a joint deed. The deed to plaintiff did not evidence a sale or conveyance of the homestead by either husband or wife. It was an instrument by which the wife took or perfected title to the land, and not an instrument by which such title was conveyed away or incumbered. It may be argued, perhaps, that the transaction by which the first deed from Taft was abandoned or cancelled, and a new deed taken to plaintiff, was, in effect, a conveyance from the husband to the wife; but, if so considered, it was still a perfectly legitimate transaction. It has often been held that the conveyance of a homestead by husband or wife is valid unless it operated to delay or defraud existing creditors of the grantor. *Payne v. Wilson,* 76 Iowa 377; *Butler v. Nelson,* 72 Iowa 732; *Aultman, Miller & Co. v. Heiney,*

59 Iowa 654; *In re Crocker's Estate,* 148 Iowa 104. The statute invoked by appellant has no proper application to the facts of the present case.

III. There was put in evidence a' writing purporting to have been executed by the plaintiff and the defendant Emma C. Dean, by the terms of which plaintiff "gives and grants" to Mrs. Dean "the right to erect a dwelling house of such size as she may desire" on the tract of land now in controversy, describing the entire farm of about 80 acres, "to keep and maintain the same thereon, with full right of ingress and egress and the use of adjacent land for outbuildings and other household purposes," with right to remove the same at the expiration of the term. The term of the lease is stated to be 20 years, at the annual rental of $10. It bears date of September 9, 1891. Upon this same piece of paper, and below the signatures thereto, written in pencil, are these words: "Renewed Sept. 12, 1911. C. E. Hayes. Emma C. Dean." The plaintiff admits making the instrument dated September 9, 1891, but denies having agreed to any renewal thereof, and denies her signature to the words indicating a renewal. The court appears to have found for the plaintiff against the genuine character of the renewal, and its decree not only quieted the title to the farm in plaintiff, but ordered that a possessory writ issue in her favor, and entered judgment against Emma C. Dean for the rental value of the premises, possession and use of which were retained by her after notice to quit.

If the plaintiff's case upon this issue depended solely on the alleged forgery of her signature to the words of renewal found on the lower margin of the written lease, we should hesitate somewhat to affirm the finding of the trial court. But much more appears, giving an air of unreality to the defendant's claim. Plaintiff, in her original petition,

6. EQUITY: maxims: seeking and doing equity: forfeiture of equitable right.

in addition to alleging her ownership of the farm, alleged that the defendant Emma C. Dean had entered into possession of the dwelling house under a lease from plaintiff, and for several years had continued in such possession as plaintiff's tenant, and had wrongfully taken and maintained possession of the remainder of the farm. It is also alleged that the lease of the dwelling had expired, and plaintiff was continuing to hold over without right and in defiance of a notice to quit. In answer made under oath, Mrs. Dean unequivocally denied the alleged lease, and set up, as the foundation of her right to the possession of the land, an alleged oral agreement with her father, who, she said, was the absolute owner thereof. At a later stage of the trial below, Mrs. Dean, without expressly admitting the lease from her mother, filed an amendment to her answer, alleging a renewal of the lease, and that it will not expire until September 12, 1931. She then further says that the "practical construction at all times placed upon said instrument was and is that this defendant was and should be entitled to the entire premises therein described," to wit, the entire 80-acre tract; and upon these allegations she asserts a right to remain in possession of the entire premises for the full period of 20 years from the date of the renewal. It appears in evidence that Mrs. Dean never constructed a separate dwelling on the land, pursuant to the terms of the lease, but that she did expend a sum of money in renewing or rebuilding or enlarging the family dwelling on the farm, and that she afterward made her home there. It fairly appears that the relations between herself and plaintiff were inharmonious, and plaintiff left the farm and established a home in town. Her husband remained on the farm, but there is shown no serious estrangement between him and herself, and he contributed to her maintenance and support. While these separate homes were maintained, the husband apparently had general charge and management

of the farm, and upon his death, the daughter, Mrs. Dean, repudiated her mother's claim of title, and extended her own claim and possession to the entire property. To believe that these parties would enter into a written lease at a nominal rental for the small tract on which the daughter could erect a dwelling house with suitable outbuildings, and at once give it a "practical construction" as a lease of the entire 80-acre farm, at a rental of $10 a year for 20 years, and then, at the expiration of that time, and notwithstanding the unfriendly relations between them, extend such lease, with its extravagant "practical construction," over an additional 20 years, is putting a quite unbearable strain upon human credulity. It is evident that the trial court refused to credit the story, and we are not disposed to overrule that conclusion. Had defendant acted upon the lease given her, and taken possession of a small tract reasonably sufficient for the expressed purpose of the agreement, and she were now in court asserting a right of possession so acquired, and exhibiting the renewal written on the lease, we should hesitate but little in modifying the decree below to protect her right therein. But having at first not only utterly denied the existence of any lease, but also the title of her lessor as well, and then, when forced to admit the existence of the lease, having sought to pervert its simple terms into a manifestly unreasonable and unconscionable contract, we think she has no standing upon which to ask equitable relief in that respect, even though we were to find that the signature to the renewal is in the genuine handwriting of the plaintiff.

Taking the case as a whole, we find no sufficient ground on which to overturn the decree of the trial court. We are abidingly convinced of the soundness of the plaintiff's title, and of her claim to equitable relief. The legal proposition upon which appellants rely,—that, the legal title having once vested in R. C. Hayes, the second deed by Taft to plain-

tiff was wholly insufficient to vest her with title, either legal or equitable,—having been overruled, there is no merit left in any of the defenses pleaded or argued.

The case is an unpleasant one, as legal controversies between closely related persons are likely to be; but we are glad to say, to the credit of human nature, that controversies in which a daughter thinks it necessary, in a quarrel over a matter of dollars and cents, to put upon her mother the stigma of adultery, and the mother is willing to retaliate by summoning the neighborhood to impeach the general moral character of her daughter and granddaughter, do not often make their appearance in court. Such an exhibition would seem to indicate a lack of familiarity with the oft-quoted maxim which suggests that parties, before coming into a court of equity, should first avail themselves of the conveniences of a lavatory.

The decree of the district court is—*Affirmed*.

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.