6w278
d194 258

## ❙ Williams *against* Maus.

The appointment of a trustee by the court of another state, in the room of a deceased trustee, to whom land in Pennsylvania had been conveyed, vests no title to the land in the trustee thus appointed, so as to enable him to maintain ejectment for it.

WRIT of error to the court of common pleas of *Columbia* county.

James West, a citizen of the state of Maryland, and resident of the city of Baltimore, being indebted in divers sums of money to different persons, and claiming to be the owner of considerable property, of which the land in question was a part, by his deed of conveyance, bearing date the 21st of November 1805, assigned and conveyed the same to Humphry Pierce and Alexander M'Donald, of the city of Baltimore, for the purpose of selling it and paying his debts with the moneys arising therefrom. The defendant being in possession of the land at the commencement of this suit, and sometime previous thereto, and claiming to hold it adversely to the title transferred by West to Pierce and M'Donald, they brought this action of ejectment against him in the common pleas of Columbia county, where the land is situate, in order to recover the possession thereof. Pending the action, they both died, first Pierce and then M'Donald. After which, upon application of the creditors of West, to the county court of Baltimore, that court appointed Nathaniel Williams of the city of Baltimore, a trustee in the place of Pierce and M'Donald, declaring the title to the trust property remaining undisposed of, to be vested in him. This being done, the deaths of Humphry Peirce and M'Donald were afterwards suggested on the record of this action, and Nathaniel Williams, upon his allegation, that he was the next in interest, was substituted in the place of Pierce and M'Donald, agreeably to the act of assembly, which provides, that no writ of ejectment shall abate, by reason of the death of the plaintiff or defendant.

On the trial of the cause, the plaintiff, after showing that by a patent from the commonwealth of Pennsylvania, and divers subsequent deeds of conveyance, the legal title to the land had become vested in James West, who transferred the same, as was also shown, in the manner already mentioned to Pierce and M'Donald, then offered to read in evidence to the jury the exemplification of a record of the proceedings had in the Baltimore county court of the

[Williams v. Maus.]

state of Maryland, authenticated in due form, showing the deaths of Humphry Pierce and Alexander M'Donald, the plaintiffs, and the appointment of Nathaniel Williams, as trustee in their place, who is thereby declared to be fully invested with the legal title to all the trust property remaining undisposed of, and mentioned in the deed aforesaid, from West, to Pierce and M'Donald, which included the land in dispute.    The defendant's counsel, however, objected to this exemplification's being read in evidence, and the court below (Lewis, president) overruled the evidence, to which the plaintiff's counsel took a bill of exception.    And this is the only matter assigned for error.

*Donnell*, for plaintiff in error, cited 2 *Mad. Cha.* 162; *Willes on Trusts* 145.

*Frick*, contra, cited *Story's Conflict of Laws* 380, 416, 419, 450, 468.

The opinion of the Court was delivered by

KENNEDY, J.—The evidence offered here, was objected to, on the ground that a court of the state of Maryland had no authority to entertain such a proceeding in regard to lands lying beyond her territorial limits, and therefore could make no order or decree, that would affect the title thereto, or transfer it from him in whom it then remained, to any other.    And unless the decree of the Baltimore county court were to have this effect, it was perfectly obvious, that it did not tend to prove that Nathaniel Williams, who was then claiming to recover the land in question, had any title to it; and therefore ought to be considered irrelevant and inadmissible.

According to the maxim, *extra territorium jus dicenti impune non paretur*, it would certainly seem, that no sovereignty could claim to bind or change the right to real or any immoveable estate lying without its territorial limits, and had therefore no reason to expect that such a decree, if made, would be regarded by the tribunals of the state *rei sitæ*.    In short, it cannot be treated otherwise than as a mere nullity by those tribunals, consistently with a proper respect for their own authority, and the obligation, which they owe to their own sovereignty to maintain all its rights unimpaired.

In England, where a court of chancery, when having jurisdiction over the person of a bankrupt, has gone a great length in coercing him to furnish the assignees under the commissioners with the means of possessing themselves of all his estate, yet it has refused to compel him to execute an assignment of debts due to him in America, though the American government had refused to take any notice of the rights of the assignees under the bankrupt laws of England.    *Ex parte* Blakes, 1 *Cox* 398.    Nor will he be compelled to convey to the assignees his real estate lying in Scotland,

[Williams v. Maus.]

Selkrig v. Davies, 2 *Dow.* 245. And as to the real estate of an English bankrupt, lying in another country, under the dominion of a foreign government, it was never supposed that even the English parliament, in the full exercise of all its omnipotency, could make a law that would transfer or divest him of his right thereto, contrary to the regulations of the country where it was situate. To suppose that such a thing could be done under any circumstances, would be in direct contradiction to the universally received axiom, that every state possessing an exclusive sovereignty and jurisdiction within its own territory necessarily has the power of making laws, which, when passed, affect not only all the persons, but likewise all the property, whether real or personal, within its own territory; and hence it is, that these laws become the rule of decision for all questions which arise there. Campbell v. Hall, *Cowp.* 208. And in conformity to this principle, it is said by Lord Mansfield in Robinson v. Bland, 1 *Bl. Rep.* 259: " Landed property must be governed by the local law; in consequence whereof, deeds and wills made in Paris, to convey lands in England, must be *made* and *interpreted* according to *our laws.*" And agreeably thereto, it would seem to be regarded as a settled rule in the United States, that any title or interest in land or real estate, can only be acquired or lost in the way directed by the law of the place where the same is situate. *Story's Con. of Laws* 301–2. Cutter v. Davenport, 1 *Pick.* 81, 86. Hasford v. Nichols, 1 *Paige* 220. Wells v. Cowper, 2 *Hamm.* 124.

Now, by the laws of Pennsylvania, the title to real estate cannot be transferred or passed, not even by the owner of it, without a writing made by him to that effect, and signed either by himself or his agent, thereunto lawfully authorized by writing; unless it be in cases of sales made by the proper officers, under the authority of judicial process or execution, for the payment of the debts of the owners thereof, or by decrees or orders of some of the courts within the state for some special purposes, authorized by statute; or in cases of *resident debtors* of the state, who have assigned their estates to assignees or trustees, for the purpose of being converted into money to pay their debts, where the courts of common pleas of the respective counties in which such assignors resided, at the time of making their assignments, are authorized by statute to appoint new trustees when one or more of the several assignees or trustees in any such case shall have removed, or refused to accept or execute the trust, or shall have died, or been dismissed, or discharged therefrom, by the same courts. But in no case, whatever, is any court without the state, authorized to supply the place of a trustee of real estate, lying within the state, who has ceased to exist, or become incapable of acting and executing the trust from that, or any other cause. As well might the title to land lying within the limits of the state be transferred by a fine or common recovery, levied or suffered in a foreign court, or court of a sister

[Williams v. Maus.]

state, and be transferred by the decree or order of the same court, made too against the party, whose interests may be affected by it, *in incertum*, and yet such a thing was never heard of. Indeed, it may be said, that the mode by fine or common recovery, would be the least exceptionable of the two, because the party entitled to the freehold interest of the estate in possession, is not only made a party to such a proceeding, but must be consenting to the transfer of title thereby intended to be made. But in this case, as West was a resident of the state of Maryland, when he made the assignment to Pierce and M'Donald, and having made it in that state to assignees, who were also resident therein, I think it more than questionable, whether any court, even within this state, could appoint a trustee, so as to invest him with the title to the land in question, which was transferred by West to Pierce and M'Donald. I am inclined to think, that our acts of assembly on this subject, extend only to assignments made within the state, and perhaps only to such as are made by residents thereof. The title here transferred by West to Pierce and M'Donald, upon the death of Pierce, became wholly vested in M'Donald, by the right of survivorship; and upon his death, descended to his heir at law, where it would seem to remain now.

Judgment affirmed.