SARAH I. ACKER, AND SARAH I. ACKER as Next Friend
    of WILLIAM FRANKLIN PRIEST, JOHN EDWARD
    PRIEST, JOSEPH HENRY PRIEST, MARTIN RAYMOND
    PRIEST, ELMER CLYDE PRIEST, AND CHARLES S.
    PRIEST, Minor Heirs of ELIZABETH V. PRIEST,
    Deceased, Appellants, v. STEPHEN PRIEST AND
    ISAAC DICKERSON; G. S. ACKER, Administrator of
    the Estate of ELIZABETH V. PRIEST, Deceased,
    Appellant, v. STEPHEN C. PRIEST.

**Trust.** A father, for the purpose of making an equal distribution among
his children, conveyed Kansas land to a son-in-law with the assent of
the donor's daughter who was grantee's wife. The deed recites a
money consideration. The son-in-law sold the land and bought other
in Iowa with the knowledge and assent of his wife. *Held,* no trust
resulted under Kansas law or Iowa law, because grantee made no
promise, no trust appears on the face of the deed, and because it
recites a money consideration which, under such circumstances, can
not be contradicted by extrinsic evidence, in absence of fraud or
mistake. The fact that the father furnished the purchase price can
result in no trust in favor of the *daughter.* It could be created for
her by express action, only, and an express trust may not be shown
in parol. Neither is the trust created, because love and affection for
the daughter was the true consideration. These are a consideration,
but not a "purchase price."

No CONSTRUCTIVE TRUST results, because there was no fraud. Even the
breach of an express promise is not a sufficient fraud, unless the
promise was part of a scheme to get title in order to defraud the
*cestui.*

**Admissions** made by the son-in-law after selling the Kansas land, that
its proceeds belonged to his wife and that he intended to buy her a
farm with them, do not create a trust in her favor in lands bought
with such proceeds, because said admissions were not in writing, and
evidence a mere voluntary agreement.

**Lex Loci.** Whether a trust interest has been created in lands
lying in a sister state, is to be determined by the laws of that state.

*Appeals from Cass District Court.*—HON. N. W. MACY, Judge.

FRIDAY, DECEMBER 14, 1894.

THE first of these actions is a suit in equity to establish a trust in certain funds in the hands of the defendants and appellees, arising from the sale of a farm in Cass county, Iowa, by defendant Priest. The second is a law action, aided by attachment, to recover for an alleged conversion of certain moneys belonging to the estate of Elizabeth V. Priest, deceased. The cases were tried to the court without a jury, and judgment and decree were rendered, dismissing the plaintiffs' petition in each case, and the plaintiffs appeal.— *Affirmed.*

*H. G. Curtis* for appellants.

*Willard & Willard* and *DeLano & Meredith* for appellees.

DEEMER, J.—I. The plaintiffs in the equity suit are the heirs at law of Elizabeth Priest, deceased, and the defendant Stephen C. Priest is their father. Mrs. Priest was a daughter of one Joseph Abrams. Joseph Abrams had one son and three daughters, besides Mrs. Priest. In the month of July, 1884, Abrams, who was then living in the state of Kansas, concluded to make a partial distribution and advancement of his property to his children. He was then the owner of two farms in Kansas, one of which was known as his "Home Farm," and the other was occupied by defendant Priest and his family. Thomas W. King, another son-in-law, owned and occupied another and a third farm in the same county as the other two. In order to carry out his purpose, and make an equal distribution of property to his daughters, Abrams made

arrangements with King to exchange the "home farm," valued at eight thousand dollars, for the King place, at the agreed price of four thousand dollars. Prior thereto, however, Abrams had had a conversation with defendant Priest, in which he told him he intended to give him a farm. After making arrangements with King, Abrams informed defendant that he had an opportunity to trade the "home farm" for King's land, and directed defendant to go and look at the farm, and if it suited him he (Abrams) would make the exchange. Defendant, after examining the place, was pleased with it, and so informed Abrams, and Abrams made the contemplated exchange. Abrams deeded the home farm to King, and King, by direction of Abrams, and with the knowledge, direction, and consent of the deceased, Mrs. Priest, made a deed to his place to the defendant Priest. This last deed was a warranty deed, in the usual form and for the expressed consideration of four thousand dollars. Shortly after the making of these deeds, the defendant moved onto the King farm, and used and occupied it for a year or more, when he sold it, and with the proceeds purchased a farm in Cass county, Iowa, from one Isabella Goodale. The deed to the Cass county land was taken in the name of the defendant with the knowledge and consent of his wife. Defendant and his wife immediately took possession of the Cass county land, and occupied and used the same until the death of the wife, in April, 1888. After the death of the wife, and in May, 1891, the defendant sold the land in Cass county, and at the time of the commencement of this suit was in possession of a large part of the proceeds of the sale. Plaintiffs claim that the defendant at all times had the title to the Kansas land and to the land in Cass county in trust for his wife, Elizabeth V. Priest, and that they, as her heirs at law, are entitled to have a trust impressed upon the funds now in the hands of the defendant,

arising out of the sale of the Cass county land.    Defendant Isaac Dickerson was made a party to the suit because of his having possession of some of the funds arising from the sale of the land in this state.

Our first inquiry will be directed to the question as to whether there was any equitable title in the Kansas land in Mrs. Priest or not.    Defendants pleaded and proved upon the trial in the court below the statutes of the state of Kansas with reference to trusts in land, which are as follows (Gen. St. Kan. 1868, Ch. 114):

"Sec. 6. When a conveyance for a valuable consideration is made to one person, and the consideration thereof paid by another, no use or trust shall result in favor of the latter, but the title shall vest in the former, subject to the provisions of the next two sections.

"Sec. 7. Every such conveyance shall be presumed fraudulent as against the creditors of the persons paying the consideration therefor.    And where a fraudulent intent is not disproved, a trust shall, in all cases, result in favor of prior creditors to the extent of their just demands and also in favor of subsequent creditors, if there be sufficient evidence of fraudulent intent.

"Sec. 8. The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid, or where such an alienee, in violation of some trust, shall have purchased the land with money not his own, or where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land, or some interest therein, in trust for the party paying the purchase money, or some part thereof."

They also pleaded and proved the statute of frauds in that state, which is as follows (Gen. St. Kan. 1863,

section 6, chapter 43, p. 934): "No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default, or miscarriage of another person, or to charge any executor or administrator upon any special promise to answer damages out of his own estate, or to charge any person upon any agreement made upon consideration of marriage, or upon any contract for the sale of lands, tenements, hereditaments, or any interest in or concerning them, or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person therein, to, by him, or her, lawfully authorized"—and section 1: "No trust concerning lands, except such as may arise from implication of law, shall be created unless in writing, signed by the party creating the same, or by his attorney thereto, lawfully authorized in writing."

Plaintiffs do not—nor, indeed, could they, under the statutes of either Kansas or of this state—claim an express trust in the land, or the proceeds thereof. Their claim is that from the transactions between the parties, as proved, there arose an implied, a resulting, or a constructive trust, which the law will recognize and enforce. We turn, then, to the evidence, and find that while it was the intention of Abrams to make a partial distribution of his estate among his heirs, yet it did not appear to him to be important to whom he made the deeds—whether to his daughters, in their own names, or to their husbands. The deed to the home farm was made to King, the husband of one of his daughters, and the deed to the King farm was made direct to defendant Priest. Abrams had previously spoken to defendant about giving him a farm, and while the deed was, no doubt, made so as to place all

his children on an equality, it is quite evident to us that it was wholly immaterial to him to whom the deed should be made. Before having the deed made to defendant, Abrams spoke to his daughter, Mrs. Priest, about how the deed should be made, and "she said to make it to her husband; it was all the same." Again, Abrams testifies, "My daughter gave no reason [for making the deed to her husband], except that it would be all right, recognizing him as her husband." Even if Abrams intended the deed to be for the benefit of Mrs. Priest and her children, as he says, he did not so state to defendant, and defendant had no knowledge but that he was to take the beneficial as well as the legal estate. Abrams directed King to make the deed to defendant, and King had no conversation whatever with defendant.

Applying these facts to the statutes of Kansas, before quoted, with reference to the creation of trusts, and it is clear that defendant took an absolute title to the land deeded him by King, unincumbered with any trust. It is contended, however, that the laws of Kansas have no application to this case, that the statutes above quoted relate simply to the remedy, and that the *lex fori* governs. Without deciding this question, so far as it relates to the statute of frauds, for it is not necessary to a determination of the case, and passing it with the single remark that where the statute relates simply to the remedy, and does not make the parol contract void, as is the case with the statute in question, there is much force in appellants' position, we are clearly of the opinion, however, that the other statutes with reference to the creation of trust estates are binding, for they go to the validity and operation of the contract, and of the alleged trust in the land. It is familiar doctrine that the law of the place where the contract is made is to govern as to its nature, validity, obligation, and interpretation, and the law of the forum

as to the remedy. *Bank v. Donnally*, 8 Pet. 361; *Scudder v. Bank*, 91 U. S. 406; *Burchard v. Dunbar*, 82 Ill. 450. It is also everywhere acknowledged that the title and disposition of real property are exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one person to another. *Korr v. Moon*, 9 Wheat. 565; *McCormick v. Sullivant*, 10 Wheat. 196. And a title or right in or to real estate can be acquired, enforced, or lost only according to the law of the place where such property is situated. *Benttely v. Whittemore*, 18 N. J. Eq. 373; *Hosford v. Nichols*, 1 Paige, 220; *Williams v. Maus*, 6 Watts, 278; *Wills v. Cooper*, 2 Ohio, 124.

If we are correct in our premises, it necessarily follows, as a conclusion, that under the laws of Kansas there was no trust created by law in the Kansas land, even if it be said that Mrs. Priest furnished the consideration paid for the land, because there was no agreement on the part of the defendant that he should hold the title in trust for his wife. But, without reference to these statutes, we think it quite clear that no trust resulted by operation of law from the transactions between these parties. Mr. Pomeroy, in his excellent work on Equity Jurisprudence (section 103), says: "All true resulting trusts may be reduced to two general types: (1) Where there is a gift to A, but the intention appears, from the terms of the instrument, that the legal and beneficial estates are to be separated, and that he is either to enjoy no beneficial interest, or only a part of it. In order that a case of this kind may arise, there must be a true gift, so far as the immediate transferree, A, is concerned; the instrument must not even state any consideration, and no valid, complete trust must be declared in favor of A, or of any other person. * * * If the conveyance be by deed, the trust will result to the grantor. (2)

The second type includes the cases where a purchase has been made, and the legal estate is conveyed or transferred to A, but the purchase price is paid by B." This first type grew out of the old English doctrine that where land was conveyed by deed without consideration, and without any use or trust being declared, a trust resulted to the feoffer, the feoffee taking only the naked legal title. If it ever had any application in this country, it can only obtain where the deed simply contains words of grant or transfer, and does not recite or imply any consideration, and does not declare any use in favor of the grantee, and the conveyance is not in fact intended as a gift. *Gee v. Thrailkill*, 25 Pac. Rep. (Kan.) 588; *Gould v. Lynde*, 114 Mass. 366; *Osborn v. Osborn*, 29 N. J. Eq. 385; *Jackson v. Cleveland*, 15 Mich. 94; *Shafter v. Huntington*, 19 N. W. Rep. (Mich.) 11. Such a trust must appear on the face of the deed. If there is in fact no consideration , but the deed recites one, even though it be nominal, as paid by the grantee, this statement raises a conclusive presumption, in the absence of fraud or mistake, of an intention that the grantee is to take the beneficial estate; and no extrinsic evidence is admissible to contradict the recital, or to show that there is in fact no consideration. Pom. Eq. Jur., section 1036; *Russ v. Neebius*, 16 Cal. 350; *Squire v. Harder*, 1 Paige, 494; *Salisbury v. Clarke*, 61 Vt. 453, 17 Atl. Rep. 135; *Jackson v. Cleveland, supra*. The deed in the case at bar both recites a consideration and declares a beneficial use in favor of the grantee, and it is apparent that no resulting trust of the first class arose in favor of Mrs. Priest.

As to the second type of trust, where the consideration is paid by one, and the title taken in the name of another, a trust is implied for the reason that the law infers that he who pays the purchase money intends to become the owner of the property, and the beneficial

title follows that supposed intention. If, then, it is shown that the person who furnished the money did not intend to take a beneficial interest, or if the conveyance is made to one who stands in such relation to him as that the consideration will be said to be an advancement or gift to him who has the legal title, no trust will result. If the consideration for the conveyance is simply a good one,—that of love and affection,—the doctrine of resulting trusts does not apply, for it is evident that the grantor does not intend to reserve the beneficial use. If the case at bar be treated as a purchase by defendant from King, Abrams furnishing the consideration, then it is clear that the plaintiffs are in no position to take advantage of the trust, if any resulted, for such a trust would be a resulting one in Abrams, who is yet alive. Again, under such a state of facts, equity would treat the consideration furnished by Abrams to the defendant, who was his son-in-law, as presumptively an advancement. This is the doctrine of the courts, we think, without exception. See *James v. James*, 41 Ark. 301; *Baker v. Leathers*, 3 Ind. 558; *Miller v. Blose*, 30 Grat. 744; *Thompson v. Thompson*, 18 Ohio St. 73. A trust, in such a case, would not, in any event, result to Mrs. Priest by operation of law, but by agreement of the parties. Such a trust in an express one, and can not be established by parol testimony. *Gee v. Thraillkill* and *Shafter v. Huntington, supra*. If, however, it be said that the transaction was in effect a transfer from Abrams to Priest,—Mrs. Priest furnishing the consideration,—which as we understand is the real claim of the plaintiffs, then it is clear that the only consideration so furnished was the natural love and affection which Abrams had for his daughter. She did not in fact furnish any part of the purchase price, for none was paid. There can be no resulting trust arising from the payment of purchase money, where none is paid. Natural love and affection

is a good consideration for a deed, and when that is the consideration such fact would be considered, with others, if there were others tending to establish a resulting trust, but alone it is insufficient. *Dilts v. Stewart*, 1 Atl. Rep. (Pa. Sup.) 587. See, also, to the same effect, *Braden v. Workman*, 1 Atl. Rep. (Pa. Sup.) 655. In the case of *Hawks v. Sailors*, 13 S. E. Rep. (Ga.) 638, the father-in-law made a deed to the property in controversy to the son-in-law. The consideration cited in the deed is "$500 in hand paid by Sailors, less $200 for love and affection the said White bears to his daughter, Martha A. Sailors, deducted out of the $500." The action was brought to have a trust declared in favor of Mrs. Sailors, to the extent of two fifths. The husband paid only three hundred dollars of the consideration. It was held that no trust resulted in favor of the daughter. And in the case of *Stonehill v. Swartz*, 28 N. E. Rep. (Ind. Sup.) 620, the father-in-law told the son-in-law, after the death of the wife: "I do not want to deprive you of a home. I will give you the land, with the understanding that you are to have the use of it during your life, and at your death it is to go to Lydia's children." The son-in-law went onto the land, and the father-in-law gave him a deed of general warranty. The action was brought to have a trust declared in the land in favor of the children of Lydia, after the death of the son-in-law. Held, that no trust resulted; that, if there was any trust at all, it was an express trust, and could not be proved, for the reason that it was not in writing. In addition to all this, it is quite clear from the testimony before set out that neither the wife nor her father intended that the defendant should hold simply the legal title, without the beneficial use of the property. There is no doubt in our minds but that both Abrams and Mrs. Priest regarded the transaction as a gift to the husband, with the beneficial use in the defendant, and such benefit

to his wife and children as would incidentally flow therefrom.

It seems clear from what we have said that no resulting trust arises in the case. Was there a constructive trust in the Kansas lands? Quoting again from Mr. Pomeroy's Equity, section 1044: "An exhaustive analysis would show, I think, that all instances of 'constructive trusts,' properly so called, may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source."

Beach on Modern Equity (section 226) says: "There are, therefore, two well defined classes of constructive trusts, corresponding with the two classes of fraud, viz.: (1) those which are raised in actual fraud; and (2) those raised in presumed or constructive fraud." In this case, defendant practiced no fraud or deceit upon either Abrams or Mrs. Priest. The conveyance was made to him at the direction of Abrams, upon the request of his (Priest's) wife. So far as shown, defendant had nothing to do with the conveyance, except to accept it. He did not sustain such a fiduciary relation to the other parties as that he can not, in perfect good faith, hold the title to the land, as the authorities before cited clearly demonstrate. Even had he taken title under an express promise to hold it in trust for his wife,—which the evidence shows he did not do,— his denial of the trust would not be such fraud as to raise a constructive trust, unless it be shown that such promise was part of a scheme to get the title in himself to defraud his wife. *McClain v. McClain*, 57 Iowa, 167, 10 N. W. Rep. 333; *Wheeler v. Reynolds*, 66 N. Y. 227; *Tatge v. Tatge*, 34 Minn. 272, 25 N. W. Rep. 596, and 26 N. W. Rep. 121; *Burden v. Sheridan*, 36 Iowa, 125. We do not think there was a constructive trust in the Kansas lands.

II.   It is insisted on the part of the plaintiffs that, after the sale of the Kansas lands, defendant admitted to at least two persons that the money arising therefrom belonged to his wife, and that he intended to purchase a farm for her therewith. These statements are denied by the defendant and by another witness, who was present at the time one of the admissions is said to have been made. We have considered this testimony in its bearings upon the first branch of the case, in the light of the well known rule, announced very clearly in *Lehman v. Lewis*, 62 Ala. 129, that such evidence is of the most unsatisfactory character, and is to be received with great caution, and find that it is not enough, in itself, to establish a trust, either in the Kansas lands, or in the funds arising therefrom. See, also, in this connection, *Noel v. Noel*, 1 Iowa, 423. If there was no trust in the Kansas lands, then a mere statement on the part of the defendant that the proceeds from the sale of the same belonged to his wife, and that he intended to buy a farm for her therewith, would not create a trust in the lands so bought, for two reasons: *First*, because such a trust rests wholly in parol, and can not be established under our statutes; and, *second*, it is a mere voluntary agreement or declaration, without any consideration, and can not be enforced. *Holland v. Hensley*, 4 Iowa, 222; *Westerfield v. Kimmer*, 82 Ind. 365. It may be remarked, in this connection, that the deed to the Cass county land was taken in the name of the defendant with the knowledge and acquiescence of the wife. As further sustaining our conclusions, see *Lantry v. Lantry*, 51 Ill. 458; *McClain v. McClain*, *supra*; *Shafter v. Huntington*, 19 N. W. Rep. (Mich.) 11; *Ratliff v. Ellis*, 21 Iowa, 59; *Bland v. Talley*, 6 S. W. Rep. (Ark.) 234. There was no trust in the Cass county land. We can not do better, in closing this opinion, than to quote a

paragraph from the case of *Ratliff v. Ellis, supra:* "We can not decree this property to be conveyed to complainants without overturning one of the great rules of the law, which constitutes the security of all property. If it operates unkindly in an occasional instance, we must remember that imprudence only will cause it to so work, and that the rule is a bulwark of safety to all. It is not uncommon for a court to be compelled to act in accordance with this rule, against the fullest and clearest parol evidence." The lower court was right in dismissing the petition in the equity case.

III. In the abstract it is stated that the law action was tried, by consent of the parties, upon the testimony adduced in the equity cause, and that the pleadings were the same, except that it was alleged in the law case that defendant had converted the trust funds to his own use, and damages were demanded on account thereof. These statements are denied by appellees. As the equity cause is affirmed upon its merits, it is sufficient to say that, if appellants' contention is correct, the law case must also be affirmed. The judgment and decree in these cases will be AFFIRMED.