TILLA BARTH, Appellant, v. O. R. SEVERSON et al., Appellees.

**ADVERSE POSSESSION:** Color of Title—Invalid Foreclosure. Ten
1    years' uninterrupted possession of real estate, with claim of right, under deed based on invalid foreclosure, ripens into unassailable title against all those who had knowledge of such possession and the nature thereof.

**MORTGAGES:** Foreclosure—Release of Judgment in Personam—Effect.
2    A personal judgment in foreclosure proceedings may be voluntarily waived, without invalidating the judgment *in rem.*

**DESCENT AND DISTRIBUTION:** Estoppel to Claim Inheritance. An
3    heir who actively aids his ancestor in shifting the latter's title to land from one grantee to another, in order purposely to defraud the ancestor's creditors, may not, on the death of the ancestor, assert a claim of inheritance in the land, on the theory that the last fraudulent grantee held the property in trust for the ancestor.

**TRUSTS:** Express Trusts—Parol Incompetent to Establish. An heir contending for an inheritance may not, by parol evidence, build an express trust on a warranty deed which recites a specific consideration.

**DESCENT AND DISTRIBUTION:** Advancements—Purchase by Parent With Deed to Child. The act of a father in purchasing land and causing the deed thereof to be made to his daughter creates a rebuttable presumption of advancement or gift—a presumption which can only be overthrown on the theory of a resulting trust in the father, by evidence which is practically conclusive.

*Appeal from Winneshiek District Court.*—C. N. HOUCK, Judge.

JUNE 25, 1921.

ACTION for partition of real estate. Decree was entered, dismissing plaintiff's petition, and she appeals. The facts appear in the opinion.—*Affirmed.*

*E. W. Cutting,* for appellant.

*William S. Hart* and *Boice & Hook,* for appellees.

FAVILLE, J.—This case involves a controversy between the children of O. R. Severson, now deceased. The family have been residents of Pleasant Township, Winneshiek County, Iowa, for many years. The grandfather of the parties hereto was one Syver Asleson, who settled in the township at an early day, and acquired title to 120 acres of land, known as the "old home place." Asleson conveyed this farm to his son, O. R. Severson, the father of the parties to this suit. O. R. Severson married a widow, by the name of Emily Ostenson, who, at the time of the marriage, had one son, the appellee Edwin Ostenson. Severson and his wife lived upon the home place, and there the appellant and the other children of the said O. R. Severson and his wife were born and lived for years. The appellant was married at the age of 22, and left the old home, and has since resided with her husband on a farm near the home place. The stepson, Ostenson, also went away. Three other tracts of land, in addition to the home place, were subsequently acquired. The mother, Emily,

1. ADVERSE POSSESSION: color of title: invalid foreclosure.

died in 1882, and the father and children continued to live on the home place thereafter. The son Henry was subsequently married, and moved to one of the places in question; and S. O. Severson also married. Lizzie has never married, but continued to live with her father until the time of his death. The father was made a party defendant to the suit, but died December 16, 1916, before trial of the case. About 340 acres of land are involved, divided into four separate tracts, and they will be so considered in this opinion.

The appellant's contention is that the said O. R. Severson was, in fact, the owner of all of the said described premises at the time of his death, and that the appellees holding record title to the several tracts of land held the same in trust for the said O. R. Severson; that the latter had title by adverse possession, and in the nature of a grant by acquiescence; and that the appellant, as one of his heirs, is entitled to an undivided share thereof. As to one tract, appellant also claims as heir at law of her mother, Emily.

The appellees' answer, in addition to a general denial, is a plea of estoppel, of the statute of limitations, of adverse possession, and of prior adjudication, and a claim that all conveyances by O. R. Severson were with intent to defraud his creditors.

The evidence in the case is very voluminous, and covers in detail the life and business affairs of the family for a period of more than half a century.

I. The old home place consists of 120 acres, being the east half of the northeast quarter and the southwest quarter of the northeast quarter of Section 19, in Pleasant Township. The title to this land originally stood in one Sanford, who, on July 5, 1856, conveyed it to Syver Asleson, who was the father of O. R. Severson, the father of appellant and appellees. While Asleson owned the land, and on November 23, 1874, he mortgaged it to one Peter Sampson, to secure a debt of $400. In December, 1876, Asleson deeded the land to his said son, O. R. Severson. On June 18, 1878, Severson deeded the premises to his wife, Emily, which deed was immediately recorded. Afterward, on June 3, 1882, Sampson assigned the outstanding mortgage to one Phelps; and in January, 1885, Phelps commenced an

action in the district court of Winneshiek County for foreclosure
of said mortgage. Emily Severson, who was the holder of the fee
title, died March 4, 1882. She was named as a party defendant
in the foreclosure proceedings, but the return of the original
notice recited: "Emily Severson is deceased." None of the
children of the said Emily Severson was made party defendant
in said foreclosure proceedings, nor was any appearance entered
in their behalf. The foreclosure proceedings went to decree;
and, on September 5, 1885, Phelps, the judgment creditor, as-
signed the said judgment to one Langland. In October follow-
ing, Langland released Sampson, the original judgment debtor,
from personal liability under the said judgment, by entry on
the judgment docket.

The matter appears to have remained in abeyance until
April, 1891, when a special execution was issued and levy made
on the said real estate, and the same was sold at sheriff's sale
on June 6, 1891, to Langland. On June 11, 1892, a sheriff's
deed to said real estate was issued to said Langland and placed
of record; and thereafter, on December 6, 1892, Langland and
wife executed a quitclaim deed of said premises to the appellee
S. O. Severson, son of O. R. Severson and Emily Severson, and
brother of the appellant. This deed recited a consideration of
$1,800, and was recorded June 11, 1894. Here the title rested
until, on November 13, 1916, S. O. Severson conveyed said
premises to his brother, the appellee Henry Severson. At the
time of the conveyance to him, S. O. Severson was about 20
years of age.

As above stated, the title to this tract was at one time vested
in the appellant's mother, Emily, and was divested, if at all,
by the foreclosure proceedings above referred to.

Appellant's position is that, as an heir of her mother, she
is entitled to a share in this property, because of the claim
that the foreclosure proceedings were invalid; and that, if it
should be held that said foreclosure proceedings were not void,
in any event the title which vested in her brother, the appellee
S. O. Severson, was held by him in trust for the father, O. R.
Severson; and that the appellant is entitled, as one of the heirs
of her father, to an undivided share in this property.

At the time the foreclosure proceedings were instituted,

the record title to said real estate was vested in the mother, Emily Severson, who was at that time deceased. The husband of Emily Severson was made a party defendant in said proceedings. The mortgage which was foreclosed had been given by a prior owner of the premises. It does not appear that the mother, Emily, had ever assumed this mortgage or incurred any personal liability therefor. The sheriff's deed was issued June 11, 1892, and placed of record two days later, and the deed from the purchaser at sheriff's sale, Langland, to the appellee S. O. Severson, was executed December 6, 1892, and was recorded June 11, 1894.

In regard to these foreclosure proceedings, the appellant makes two contentions: First, that the proceedings were absolutely void, because Emily Severson, or her heirs, was not made a party in the foreclosure proceedings; and second, that, before the execution of the sheriff's deed, the holder of the sheriff's certificate of sale released one of the defendants in said action, Peter Sampson, from all personal liability on said judgment. Sampson appears to have been the original mortgagee, and to have assigned and transferred the note and mortgage to Phelps, the plaintiff in said action. Personal judgment was entered against Sampson, as indorser on the note.

The release of Sampson from personal liability on the judgment would have no effect upon the legality of the foreclosure proceedings. The plaintiff in the foreclosure proceedings could have waived any claim for personal liability at the institution of the proceedings, had he seen fit so to do, and sought foreclosure only against the land. The release of the judgment debtor, Sampson, from personal liability amounted to no more than an election on the part of the then holder of the note and mortgage to proceed strictly *in rem*, and to waive his right to a claim *in personam*. This he had a right to do, without in any way affecting the validity of the foreclosure proceedings.

2. MORTGAGES: foreclosure: release of judgment *in personam*: effect.

The sheriff's deed was recorded on June 13, 1892. This action was originally begun in May, 1916; and, after the death of the father, O. R. Severson, an amended and substituted petition was filed, on March 10, 1917.

Section 2963-h, Code Supplement, 1913, provides as follows:

"No foreclosure proceeding or sale of real estate on execution prior to January first, nineteen hundred, wherein a sheriff's deed was executed and which purports to sustain the record title shall be held ineffectual on account of the failure of the record to show that any of the steps in obtaining said judgments or in the sale of said property were complied with, that such proceedings are hereby legalized and made valid as if the record showed that all the provisions of the law had been complied with."

Whether this provision of the statute is conclusive on appellant's right to question the validity of the foreclosure proceedings, we do not determine, for the reason that the appellees have not invoked this statute as a defense to appellant's claim. The evidence, however, conclusively establishes that, from and after the date of the deed to S. O. Severson, on December 6, 1892, he continued in full possession of said premises, with color of title, and asserting his claim of right thereto. All of this was known to the appellant.

The deed to the appellee S. O. Severson had been on record nearly 22 years, at the time the appellant commenced the original suit, and had been so recorded some 18 years after the appellant had attained her majority. The mother, under whom appellant claims, died in 1882.

Our general statute of limitations, Code Section 3447, provides that actions for the recovery of real property must be brought within 10 years. This statute is a complete bar to the appellant's right to recover an interest in this property, under the facts disclosed in the record, as one of the heirs of her mother, Emily Severson.

Appellant contends, however, that she is entitled to recover as one of the heirs of her father. The same state of facts that bars the appellant from maintaining the action as heir of her mother, Emily, would also bar her father from maintaining an action as the surviving spouse of Emily; and surely, the appellant, as the heir of her deceased father, can, after his death, have no greater rights to maintain the action than could the decedent. Furthermore, when the half-brother, Edwin Ostenson, brought suit for partition of certain real estate, the appellant herein was made a party defendant in said action, as were

her father and her brother, S. O. Severson. In said action, the father testified that S. O. Severson was the owner of the home place, and S. O. Severson testified and asserted that he was such owner.... The appellant had knowledge of said matter. This was more than 10 years prior to the commencement of this action; so not only did S. O. Severson have color of title and possession thereunder, but, to appellant's knowledge, for a period beyond the statute of limitations, was asserting his absolute ownership of said premises.

Upon this record, the appellant can claim no interest in the home place, either as heir of her mother, Emily, or of her father, unless she has established that the title to said premises is held by the appellee S. O. Severson in trust for his father, O. R. Severson, in which event she would have an interest as one of the heirs of the latter. We shall discuss this question later.

II. We next take up the tract of 120 acres, referred to in the record by both parties as the land involved in the "Ostenson partition suit." This land is the east half of the northwest quarter of the northwest quarter of Section 19, and the southeast quarter of the northwest quarter of Section 19, and the northeast quarter of the northwest quarter of Section 30. Regarding this 120 acres, the title to 80 acres thereof, like the title to the home place, originally stood in the ancestor, Asleson, and was included in the deed from Asleson to his son, O. R. Severson, the father of the parties to this suit. The other 40 came by a series of mesne conveyances to Gunder Severson in 1866, who, in turn, deeded it to O. R. Severson in January, 1874. This 120 acres was not included in the mortgage to Sampson, which covered the home place, but it was included in the deed which O. R. Severson executed to his wife, Emily, in June, 1878; and the title to this 120 acres remained in the said wife, Emily, at the time of her death, in March, 1882.

3. DESCENT AND
DISTRIBUTION:
estoppel to claim
inheritance.

Afterward, her son by the former marriage, Edwin Ostenson, brought a partition suit to obtain his share in this 120 acres by inheritance from his deceased mother. In said action, his stepfather, O. R. Severson, and the appellant and appellees, who were his half-brothers and sisters, were all made parties.

The father and all of his children joined in the defense of said action, and the father, O. R. Severson, and the sons, S. O. Severson and Henry Severson, were witnesses in said action. A decree was entered in favor of the half-brother, Ostenson, declaring him to be the owner of an undivided 2/15 of said property, as heir of his mother, and adjudging that her sur-viving husband, O. R. Severson, was the owner of the remain-ing 13/15. Actual partition of the premises was made by allot-ting to Ostenson for his share 27 acres off of the west side of the northwest quarter of Section 19, and awarding the remainder to O. R. Severson. On appeal to this court, the decree of the lower court was affirmed. *Ostenson v. Severson,* 126 Iowa 197.

On March 4, 1903, after the decree of the lower court in the partition suit had been entered, and before decision in this court, the father, O. R. Severson, conveyed this 120 acres by deed to Alvin J. Barth, his son-in-law, and husband of the appellant. The appellant and her husband testified that this conveyance from the father was without any consideration, and that there was no change of possession, and that it was made to avoid the possibility that judgments then outstanding against O. R. Sever-son might be enforced against the land.

Afterward, on March 27, 1909, Barth and his wife, the appellant, conveyed to the appellant's sister, the appellee Lizzie, the portion of the 120 acres that had not been set off to Ostenson. It is admitted that Lizzie paid nothing for this conveyance. Thereafter, on November 13, 1916, Lizzie conveyed said prem-ises to her brother, the appellee S. O. Severson.

As before stated, the half-brother of appellant, Edwin Ostenson, brought suit in partition, and obtained an undivided 2/15 of this tract. By decree, the remaining 13/15 were set off to O. R. Severson, the surviving husband. The contention of all the defendants in said action was that O. R. Severson was, in fact, the actual owner of said premises, although the title stood in the name of his deceased wife.

In 1903, immediately after the decree had been entered in the lower court, O. R. Severson deeded this 120 acres to his son-in-law, Barth, husband of the appellant. All parties agree that this conveyance was without consideration, and was made

for the purpose of protecting the property from judgments that were outstanding against the grantor.

Subsequently, in March, 1909, Barth and his wife, the appellant, conveyed this tract, less the 27 acres awarded to Ostenson, to the appellee Lizzie. No money was paid for this conveyance, which was by warranty deed, in which appellant joined.

In the action brought by Ostenson for partition of his share as one of the heirs of Emily, it was the contention of the appellant, as well as of her father and her brothers and sisters, that the deed from the father to his wife, Emily, was without consideration, and was in trust, for the use and benefit of the father, and that Emily had no interest therein. The court adjudged that the half-brother had a 2/15 interest in said premises as the heir of his mother, but also decreed that the remaining 13/15 were in the husband, O. R. Severson. This adjudication was procured in an action in which the appellant herein was a party, and in which she was contending that the deed from O. R. Severson to the mother, Emily, did not pass the title to Emily. She knew of that adjudication, and that, immediately after the decree was entered establishing an undivided 13/15 of said property in the father, O. R. Severson, the said property was conveyed to her husband. This took place in March, 1903.

Appellant joined with her husband in conveying these premises to the appellee Lizzie, on March 27, 1909, by full warranty deed. Upon this record, the appellant is in no position now to assert any claim whatever to these premises as the heir of her deceased mother, Emily. Not only has the statute of limitations run against any such claim, but, by reason of the other facts disclosed, the appellant is now estopped from asserting any such claim.

Can she now assert any such claim to the premises as one of the heirs of her deceased father? It is conceded that the quitclaim deed by the father to Barth, the son-in-law, in 1903, was without actual consideration. It is also conceded or established by the evidence that the warranty deed from Barth and his wife, the appellant, to Lizzie, made in March, 1909, was likewise without consideration, although it recited a consideration of $3,500. It is also conceded, or fairly established by the

evidence, that the deed from Barth and the appellant to Lizzie was executed and delivered at the instance and suggestion of the father, O. R. Severson. Under the disclosed facts, can the appellant now assert that the said title so conveyed by her and her husband to Lizzie was held by the latter in trust for the use and benefit of her father, and that, as his heir, she can now assert an interest in said premises? The appellant and her husband both testified, in regard to said conveyance, to the fact that the conveyance from the father to Barth was because there were outstanding judgments against the father. There was no change of possession, and both appellant and her husband testified that, during the time they held the title, they received nothing whatever from the land, and exercised no control over it. The appellant testified:

"The reason we made that deed to Lizzie was to help father to keep from paying these old judgments. She should hold it the same as we held it for him, he said."

Under these conveyances, on November 13, 1916, Lizzie deeded said described premises to the appellee S. O. Severson. The evidence establishes that this deed, together with other deeds exchanged on said date between the various appellees, was executed at the suggestion and with the knowledge of the father, O. R. Severson. Upon this record, can the appellant now assert any interest in these premises as heir at law of her father? Assuming that the full fee title vested in the father by the decree in the partition suit, the testimony of the appellant is conclusive, that she knew that the conveyance of the property by her father to her husband was for the express purpose of defeating outstanding judgments against the father, and also knew of and participated, as she claimed, in the conveyance of the premises by herself and husband to Lizzie, for the express purpose of placing the title to said premises where it could not be reached by the creditors of the father, O. R. Severson.

It is the contention of the appellant that these facts established that Lizzie and her grantee, S. O. Severson, held the title to said premises in trust for the use and benefit of the father, and that, after his death, she, as his heir, was entitled to an undivided interest therein.

It is, to say the least, a somewhat unique position for a liti-

gant to occupy, to set up his own illegal and fraudulent act as a basis for the claim of a right in property. Conceding that the title was legally lodged in the father, O. R. Severson, appellant concedes, and in fact contends, that she was instrumental in bringing about a transfer of said title from her father, through the medium of her husband, and lodged the same in Lizzie, all for the unlawful and fraudulent purpose of attempting thereby to defeat the creditors of her father; and that, because thereof, the real title remained in the fraudulent grantor, and she, as his heir, can now assert an interest therein.

It is a rule too elementary to require citation of authority to support it that, where parties have participated in a fraudulent act, a court of equity will leave the parties where it finds them.

Under the record as made by the appellant, the father, if living, could not secure in a court of equity a recognition of his title to the premises so conveyed to Lizzie for the fraudulent purpose and intent of placing the same beyond the reach of his creditors. He could not come in with clean hands, and a court of equity would leave him where it found him. Under her own testimony and that of her husband, the appellant, seeking to stand in the shoes of the deceased grantor, is also without clean hands. Furthermore, the appellant's own testimony shows that the decedent participated in the conveyance of this tract to

4. TRUSTS: express trusts: parol incompetent to establish.

Lizzie, and caused the deed to be executed, conveying the premises to her. If there was no fraud attached to the transaction, the elements of a resulting trust would be entirely lacking. The presumptions of an advancement or an executed gift to the daughter would be available in her behalf as against any claims of the heirs of the decedent, even if he were the owner in good faith, and if he, in good faith and without fraud, caused the conveyance to be made to the daughter.

The pronouncement of this court in the *Ostenson* case, supra, applies with equal force to such a situation. In it we said:

"The deed from the defendant, O. R. Severson, to his wife is absolute in form, and recites a consideration of $5,000 paid to the grantor. That an express trust cannot be proven by parol is well settled. *Gregory v. Bowlsby*, 115 Iowa 327; *Rogers v.*

*McFarland,* 89 Iowa 286. The conveyance was directly from Severson to his wife, .some years after he had purchased and acquired the title to the land; hence it is not a case for the application of the rule obtaining where a purchase is made and the price paid by one, and the title passes to another. *Gregory v. Bowlsby,* supra. The deed itself precludes parol proof of want of consideration for the purpose of establishing a resulting trust. It is absolute on its face; and, though there may not have been any consideration therefor, it recites one, and the presumption is conclusive, in the absence of fraud, that the grantee is to take the beneficial estate, and the recital cannot be contradicted by parol evidence of a different agreement. *Acker v. Priest,* 92 Iowa 610; *Andrew v. Andrew,* 114 Iowa 524; *Gregory v. Bowlsby,* supra.''

So here, the deed from Barth to Lizzie recites a consideration of $3,500, and is absolute in form and a full warranty deed. An express trust cannot be proven by parol; and it is not a case for the application of the rule where the purchase is made and the price paid by one, and the title passes to another. The .essential elements of a resulting trust are lacking, even though there is no proof of a fraudulent intent in making these conveyances. O. R. Severson, if living, could not assert title in himself, as against the title held by Lizzie or her grantee, under the record as proven in this case. The appellant, as his heir, stands in no better position, and this is especially true in view of her participation in the conveyances with the same purpose and intent as the original grantor.

It is also to be noted that, at the time this action was originally commenced, the father was living, and was made a party defendant; that he joined in the defense interposed, and in the claims that the appellees were the absolute owners of the several tracts in question held by them; so that, in this action, at the time of his death, instead of repudiating the conveyances and asserting title in himself, he was assuming the contrary attitude, and contending that the title to the several tracts was complete and absolute in the several grantees.

It follows that, as to this tract, the appellant cannot assert any title, either as heir of her mother, Emily, or as heir of her deceased father, O. R. Severson.

III.    There is also involved in this action another tract of land, known in the record as the "Broghammer 80," being the northwest quarter of the northeast quarter and the northeast quarter of the northwest quarter of Section 19.    The title to these premises stood in one Broghammer, who, in November, 1898, deeded said premises to the appellee S. O. Severson, for a consideration of $1,600.    The deed was recorded the day it was given, and the title still stands in the grantee, S. O. Severson. At the date of the conveyance, S. O. Severson executed to the grantor a mortgage on said premises for $1,300.    On the same day, he executed a mortgage for $300 on the property known as the "old place."    S. O. Severson afterward executed another mortgage upon these premises.    On November 13, 1916, S. O. Severson conveyed this 80, together with the home place of 120 acres, in one deed to his brother, the appellee Henry Severson. S. O. Severson retained possession of the farm after it was purchased, and at no time during his life did the decedent, O. R. Severson, seek to establish any trust in this land; and when the appellant commenced her action originally, said decedent, O. R. Severson, joined in the defense to said action, and·claimed that the said property was the property of S. O. Severson.

So far as the record shows, there is no evidence that either the decedent Emily or the decedent O. R. Severson claimed to own this land.    The appellant is seeking to establish a trust in the land in behalf of O. R. Severson which the said decedent never asserted himself, and which he expressly disavowed by his defense to this action as originally brought.    It will be observed that the deed to this 80 stood unchallenged for a period of over 19 years.

IV.    The fourth tract of land involved in this action is referred to by both parties as the "Torgerson 40."    The title to said property was vested in the heirs of one Torgerson.    The father of appellant and appellees, O. R. Severson, was administrator of this estate.    The personal effects of said estate were sold at auction, and on said day, appellee Lizzie, accompanied by her father, bargained with the heirs for the purchase of the land at the price of $1,200.    Subsequently, a contract was entered into for the purchase of the premises, by which Lizzie

5. DESCENT AND DISTRIBUTION: advancements: purchase by parent with deed to child.

agreed to pay $450 cash, and the balance, of $750, when the Torgerson estate was settled. On February 3, 1909, the $450 was paid in cash. On that date, the father, O. R. Severson, borrowed of A. M. Severson $300. The note for this loan was signed by O. R. Severson and his son, S. O. Severson. When the Torgerson estate was settled, O. R. Severson arranged with his brother, A. M. Severson, for a loan of $700, and a mortgage for this amount was made on the 40 acres. The note and mortgage were both signed by Lizzie. The money appears to have belonged to A. M. Severson's wife. The deed to Lizzie was recorded, February 8, 1909. The mortgage of $700 was paid off by O. R. Severson.

Thereafter, in 1910, Lizzie executed a mortgage for $700 on the premises. The evidence tends to show that the entire purchase price for this 40 was paid by the decedent, O. R. Severson. The evidence also tends to show that, when the deeds were procured, the decedent, O. R. Severson, asked to have them made to Lizzie, and stated that he could not have property in his own name.

On November 16, 1916, conveyances between the parties were made, by which S. O. Severson conveyed the home place of 120 acres to his brother, Henry Severson, and Lizzie conveyed the portion of land involved in the Ostenson partition suit to her brother, S. O. Severson. S. O. Severson also conveyed to Henry the Broghammer 80, and Lizzie conveyed to S. O. Severson the Helgeson 40.

V. The evidence in the case is very voluminous. The relatives and neighbors were summoned as witnesses, and the business transactions, acts, and declarations of the decedent, O. R. Severson, covering a period of nearly 50 years were gone into very extensively and in minute detail. We can, at best, merely summarize this general line of testimony. We have heretofore set out in this opinion the evidence in regard to the conveyances of the several tracts of land in question. The evidence clearly shows that the father, O. R. Severson, was the moving spirit in the acquisition of this property and in the care and management thereof. As heretofore set out, the lands first acquired by him were deeded to his wife. After her death, he continued to occupy the home place with his children. At a com-

paratively early age, the appellant married, and moved to her own home, where she has since lived, with her husband and family. The duties of the household devolved in a large measure upon the daughter Lizzie, who remained at home. A hired girl was employed in the family for a period of years, and eventually was married to the son S. O. Severson. The two sons remained at home until after the marriage of Henry.

The evidence satisfies us that the father was the "master mind" of this family. The children were not educated, and had few opportunities. They stayed close to the farm, and all worked together. A large amount of evidence is disclosed, to show that the father stated to various witnesses that, because of the outstanding judgments against him, he could not hold any property in his own name. The real estate appears to have been taxed to the parties in whose name the title stood. There is evidence tending to show that, at different times, the father inquired in regard to the taxes, and paid them, but it nowhere appears that he ever listed any of the property for taxation as his own.

A bird's-eye view of the situation discloses a condition where a father, left a widower, with three children, maintains his home, and he and the children live and work together in common. There can be no doubt, under the testimony, but that, with judgments against him, he believed that it was impossible for him to hold any property in his own name. We are convinced that he was instrumental in securing the real estate that was purchased from time to time, and in having the title vested in the children. While the evidence is not clear on the subject, we are satisfied that the amount paid for these various tracts came out of the joint earnings of the family, each, with the father, contributing to said earnings. There is evidence to show that some claims for wages were made and allowed in adjustments by the various parties.

Conceding all that is claimed by the testimony in this regard, it fails to establish appellant's right to recover in this action. As before stated, the appellant left home at an early age. Before we would be warranted in impressing a resulting trust upon each of the several tracts held by the respective parties, the evidence must be clear, convincing, satisfactory,

and, in fact, overwhelming, to establish such resulting trust. *Malley v. Malley*, 121 Iowa 237; *McClenahan v. Stevenson*, 118 Iowa 106; *DeFrance v. Reeves*, 148 Iowa 348; *Freeborn v. Servis*, 182 Iowa 1350; *Hayes v. Dean*, 182 Iowa 619.

The attitude of the father, as established by the great weight of the testimony, indicates to us very clearly that he knew and participated in the various transfers of title between the appellees. Even after this suit was brought, he joined in the defense, resisting the appellant's claim; and appellant insists that the transfers between the parties made after the suit was brought, in November, 1916, were all made because the father, O. R. Severson, "wanted said transfers made." The record justifies this contention. We think the case, under the established facts and circumstances, comes clearly within the rule well announced by Pomeroy as follows:

"If, therefore, a purchase of either real or personal property is made by a husband in the name of his lawful wife, * * * or such a purchase is made by a father in the name of his legitimate child, * * * no trust results in favor of the husband or father, but the transaction is presumed to be a gift or advancement to or for the benefit of the wife or child." 3 Pomeroy on Equity Jurisprudence (3d Ed.), Section 1039.

Such have been our repeated holdings. *Hayes v. Dean*, 182 Iowa 619; *Mossestad v. Mossestad*, 183 Iowa 311; *Andrews v. Oxley*, 38 Iowa 578; *Cotton v. Wood*, 25 Iowa 43; *Cecil v. Beaver*, 28 Iowa 241; *Acker v. Priest*, 92 Iowa 610; *Culp v. Price*, 107 Iowa 133; *Hoon v. Hoon*, 126 Iowa 391; *Mullong v. Schneider*, 155 Iowa 12, 15; *DeFrance v. Reeves*, supra.

The presumption is in favor of the theory that the conveyance to the children was an advancement or gift, and not a resulting trust. The presumption is a rebuttable presumption, but in the instant case the evidence, instead of being of the character and sufficiency to overthrow such presumption, is more persuasive to sustain the theory of such advancement or gift.

We have not attempted in this opinion to set out or discuss the various items of evidence throughout the voluminous record. To do so would unduly extend this opinion, now already too long, and would serve no useful purpose. We are content with the conclusion that as to no one of the tracts in controversy has

the appellant established any right, either as heir of her deceased mother, Emily, or as heir of her deceased father, O. R. Severson.

Upon the whole case, we are satisfied that the conclusion and the decree of the district court was correct, and it must, therefore, be—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.